IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RENEE BURCHARD**, *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Case No.: 1:22-cv-00497-JMC** |
| | : | |
| **AMERICA 250 FOUNDATION**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
AMERICA 250 FOUNDATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Brian A. Scotti, Esq. (D.C. Bar No. 497125)
Tiffany din Fagel Tse, Esq. (D.C. Bar No. 1601147)
GORDON REES SCULLY MANSUKHANI, LLP
1101 King Street, Suite 520
Alexandria, Virginia 22314
(T): 202-399-1009
(F): 202-800-2999
bscotti@grsm.com
ttse@grsm.com

*Counsel for Defendant America 250 Foundation*

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF THE ARGUMENT ................................................................ 1

II.  FACTUAL ALLEGATIONS ....................................................................... 4

    A.   Plaintiffs' Alleged Noncompliance, Fraud, Waste, and Abuse Concerns ............. 5

    B.   Plaintiffs' Retaliation and Hostile Work Environment Allegations ..................... 7

III. STANDARDS OF REVIEW ......................................................................... 7

    A.   FED. R. CIV. P. 12(b)(1) Standard ......................................................... 7

    B.   FED. R. CIV. P. 12(b)(6) Standard ......................................................... 8

    C.   FED. R. CIV. P. 9(b) Heightened Pleading Standard.................................... 8

IV.  LAW && ARGUMENT............................................................................ 9

    A.   Plaintiffs' FCA Claim (Count I) Must Be Dismissed As a Matter of Law............ 9

        1.   Plaintiffs Fail to State a Claim under 31 U.S.C. § 3729. ......................... 10

            a.   Plaintiffs Fail to Satisfy Rule 9(b)'s Heightened Pleading
                Standard. ................................................................... 14

        2.   Plaintiffs Fail to State a Claim under 31 U.S.C. § 3730(h)(2).................. 17

    B.   Plaintiffs' Pay Discrimination Claim under the DCHRA (Count II) Must
        Be Dismissed As A Matter of Law. .................................................... 22

    C.   Plaintiffs' Discrimination, Retaliation, and Hostile Work Environment
        Claims under the DCHRA (Count III) Must Be Dismissed As A Matter of
        Law. ...................................................................................... 24

        1.   Plaintiffs' Discrimination Claim under the DCHRA Fails. ..................... 24

        2.   Plaintiffs' Retaliation Claim under the DCHRA Fails. ........................... 28

        3.   Plaintiffs' Hostile Work Environment Claim under the DCHRA
            Fails....................................................................................... 29

    D.   Plaintiffs' Wrongful Termination or in the Alternative, Constructive
        Discharge Claim (Count IV) Must Be Dismissed For Lack of Standing. ........... 31

     E.     Plaintiffs' NIED Claim (Count V) Must Be Dismissed As A Matter of Law. ........................................................................................................ 33

     F.     Plaintiffs' Defamation Claim (Count VI) and Ms. Burchard and Ms. Garlock's Defamation *Per Se* Claim (Count IX) Must Be Dismissed As A Matter of Law. ............................................................................... 34

          1.     Plaintiffs' Defamation of Character Claim (Count VI) Fails.................... 35

          2.     Ms. Burchard and Ms. Garlock's Defamation *Per Se* Claim (Count IX) Fails. ....................................................................... 37

V.     CONCLUSION ............................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliotta v. Blair,*
  614 F.3d 556 (D.C. Cir. 2010) ................................................................................. 31

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................. 2, 8, 11, 12, 25, 26, 31

*Bailey v. Verizon Comm'ns, Inc.,*
  544 F. Supp. 2d 33 (D.D.C. 2008) ............................................................................. 8

*Baird v. Gotbaum,*
  662 F.3d 1246 (D.C. Cir. 2011) ............................................................................... 30

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................................. 2, 8

*Bell-Boston v. Manpower Int'l Staffing Agency,*
  61 F. Supp. 3d 74 (D.D.C. 2014) ............................................................................. 35

*Bishopp v. Dist. of Columbia,*
  788 F.2d 781 (D.C Cir. 1986) .................................................................................. 32

*Brown v. Georgetown Univ. Hosp.,*
  828 F. Supp. 2d 1 (D.D.C. 2011) ....................................................................... 22, 32

*Brown v. Sessoms,*
  774 F.3d 1016 (D.C. Cir. 2014) ............................................................................... 25

*Caudle v. Thomason,*
  942 F. Supp. 635 (D.D.C. 1996) ........................................................................ 35, 37

*Clay v. Howard Univ.,*
  128 F. Supp. 3d 22 (D.D.C. 2015) ........................................................................... 31

*Clemmons v. Acad. for Educ. Dev.,*
  70 F. Supp. 3d 282 (D.D.C. 2014) ..................................................................... 24, 28

*Couch v. Verizon Commc'ns, Inc.,*
  No. 20-2151 (RJL),
  2021 WL 4476698 (D.D.C. Sept. 30, 2021) ............................................................ 34

*Dudley v. Washington Metro. Area Transit Auth.,*
  924 F. Supp. 2d 141 (D.D.C. 2013) ......................................................................... 30

*Easaw v. Newport,*
  253 F. Supp. 3d 22 (D.D.C. 2017) ......................................................... 24

*Foretich v. Glamour,*
  753 F. Supp. 955 (D.D.C. 1990) ............................................................ 37

*George Washington Univ. v. Violand,*
  940 A.2d 965 (D.C. 2008) ...................................................................... 22

*Hawley v. Blackboard, Inc.,*
  No. CIV.A. 03-656 (GK),
  2005 WL 513496 (D.D.C. Mar. 3, 2005) ............................................... 22

*Hedgepath v. Whitman Walker Clinic,*
  22 A.3d 789 (D.C. 2011) ........................................................................ 33

*Hoffman v. Hill and Knowlton, Inc.,*
  777 F. Supp. 1003 (D.D.C. 1991) .................................................... 36, 37

*Howard Univ. v. Best,*
  484 A.2d 958 (D.C. 1984) ................................................................ 22, 23

*Hoyte v. American Nat. Red Cross,*
  518 F.3d 61 (D.C. Cir. 2008) ........................................................... 18, 19

*Islar v. Whole Foods Market Group, Inc.,*
  217 F. Supp. 3d 261 (D.D.C. 2016) ................................................. 33, 34

*Jankovic v. Int'l Crisis Group,*
  494 F.3d 1080 (D.C. Cir. 2007) ............................................................. 34

*Kalinoski v. Gutierrez,*
  435 F. Supp. 2d 55 (D.D.C. 2006) ........................................................ 32

*Knight v. Mabus,*
  134 F. Supp. 3d 348 (D.D.C. 2015) ....................................................... 31

*Kowal v. MCI Comm'ns Corp.,*
  16 F.3d 1271 (D.C. Cir. 1994) ..................................................... 8, 14, 15

*LeFande v. District of Columbia,*
  864 F. Supp. 2d 44 (D.D.C. 2012) .................................................... 34, 35

*Lester v. Natsios,*
  290 F. Supp. 2d 11 (D.D.C. 2003) ........................................................ 30

*Lewis v. District of Columbia,*
  885 F. Supp. 2d 421 (D.D.C. 2012) ....................................................... 27

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................... 7

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) .......................................................................... 24

*Mdondji v. InterPark, Inc.*,
  768 F. Supp. 263 (D.D.C. 2011) ........................................................ 28

*Munro v. LaHood*,
  839 F. Supp. 3d 354 (D.D.C. 2012) ................................................... 30

*Rattigan v. Gonzales*,
  503 F. Supp. 2d 56 (D.D.C. 2007) ..................................................... 28

*Robinson v. Ergo Solutions, LLC*,
  85 F. Supp. 3d 275 (D.D.C. 2015) ..................................................... 32

*Savignac v. Day*,
  539 F. Supp. 3d 107 (D.D.C. 2021) ................................................... 23

*Shekoyan v. Sibley Int'l*,
  409 F.3d 414 (D.C. Cir. 2005) ........................................................... 19

*Si v. Laogai Res. Found.*,
  71 F. Supp. 3d 73 (D.D.C. 2014) ....................................................... 16

*Singletary v. Howard Univ.*,
  314 F. Supp. 3d 330 (D.D.C. 2018) ............................................... 7, 18

*Slate v. Public Defender Serv.*,
  31 F. Supp. 3d 277 (D.D.C. 2014) ..................................................... 26

*Spence v. Maryland Cas. Co.*,
  995 F. 2d 1147 (2d Cir. 1993) ........................................................... 33

*Staropoli v. Donahoe*,
  923 F. Supp. 2d 11 (D.D.C. 2013),
  *aff'd*, No. 13-5070,
  2013 U.S. App. LEXIS 16068 (D.C. Cir. 2013) ................................ 26

*Steffan v. Cheney*,
  733 F. Supp. 115 (D.D.C. 1989) .................................................... 7, 31

*Uni. Health Servs., Inc. v. United States ex rel Escobar ("Escobar")*,
  136 S. Ct. 1989 (2016) ....................................................... 10, 12, 13

*United States ex rel. Bender v. N. Am. Telecomms. Inc.* (*"Bender"*),
  686 F. Supp. 2d 46 (D.D.C. 2010) ............................................................. 12, 16

*United States ex rel. Conteh v. IKON Office Sols., Inc.*,
  103 F. Supp. 3d 59 (D.D.C. 2015) ............................................................. 15

*United States ex rel. Davis v. Dist. of Columbia*,
  591 F. Supp. 2d 30 (D.D.C. 2008) ............................................................. 15

*United States ex rel. Folliard v. CDW Tech. Servs., Inc.*,
  722 F. Supp. 2d 20 (D.D.C. 2010) ............................................................. 14

*United States ex rel. Folliard v. Comstor Corp.*,
  308 F. Supp. 3d 56 (D.D.C. 2018) ............................................................. 13

*United States ex rel. Folliard v. Hewlett-Packard Co.*,
  272 F.R.D. 31 (D.D.C. 2011) ..................................................................... 16

*United States ex rel. Health v. AT&T, Inc.* ("*Heath*"),
  791 F.3d 112 (D.C. Cir. 2015),
  *cert. denied sub nom., AT&T, Inc. v. United States ex rel. Heath*,
  No. 15-363,
  2016 WL 3461577 (U.S. June 27, 2016)..................................................... 9, 14, 16

*United States ex rel. Hockett v. Columbia/HCA Healthcare, Corp.*,
  489 F. Supp. 2d 25 (D.D.C. 2007) ............................................................. 11

*United States ex rel. Ivanov v. Exelis, Inc.*,
  41 F. Supp. 3d 50 (D.D.C. 2014) ............................................................... 20

*United States ex rel. Kinney v. Stoltz*,
  327 F.3d 671 (8th Cir. 2003) ...................................................................... 15

*United States ex rel. Landis v. Tailwind Sports Corp.*,
  51 F. Supp. 3d 9 (D.D.C. 2014) ................................................................. 12

*United States ex rel. Schweizer v. Oce N.V.* (*"Schweizer"*),
  677 F.3d 1228 (D.C. Cir. 2012) ................................................................. 17, 19, 20

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn* (*"Springfield"*),
  14 F.3d 645 (D.C. Cir. 1994) ..................................................................... 15

*United States ex rel. Totten* (*"Totten"*) *v. Bombardier Corp.*,
  286 F.3d 542 (D.C. Cir. 2002) ................................................................... 8, 11, 14

*United States ex rel. Tran v. Computer Sciences Corp.* (*"Tran"*),
  53 F. Supp. 3d 104 (D.D.C. 2014) ............................................................. 9, 15, 16

*United States v. First Choice Armor & Equip., Inc.,*
   808 F. Supp. 2d 68 (D.D.C. 2011) ................................................................. 10

*Valles-Hall v. Center for Nonprofit Advancement,*
   482 F. Supp. 2d 118 (D.D.C. 2007) ............................................................... 27

*Walden v. Patient-Centered Outcomes Research Institute,*
   177 F. Supp. 3d 336 (D.D.C 2016) .................................. 29, 30, 31, 32

*Watwood v. Credit Bureau, Inc.,*
   68 A.2d 905 (D.C. 1949) ............................................................................... 36

*Wiley v. Glassman,*
   511 F.3d 151 (D.C. Cir. 2007) ...................................................................... 22

**Statutes**

31 U.S.C. § 3729 ................................................................................ 9, 10, 18

31 U.S.C. § 3729(a)(1) ....................................................................................... 11

31 U.S.C. § 3729(a)(2) ....................................................................................... 11

31 U.S.C. § 3729(a)(3) ....................................................................................... 11

31 U.S.C. § 3729(a)(7) ....................................................................................... 18

31 U.S.C. § 3729(b)(1)(A) ................................................................................. 11

31 U.S.C. § 3729(b)(4) ....................................................................................... 10

31 U.S.C. § 3729(c) ............................................................................................ 11

31 U.S.C. § 3730 ......................................................................................... 10, 17

31 U.S.C. § 3730(b) ........................................................................................... 17

31 U.S.C. § 3730(b)(1) ......................................................................................... 9

31 U.S.C. § 3730(b)(2) ......................................................................................... 9

31 U.S.C. § 3730(h) ............................................................................. 9, 17, 19, 22

31 U.S.C. § 3730(h)(1) ....................................................................................... 18

31 U.S.C. § 3730(h)(2) ....................................................................................... 17

D.C. Code § 2-1402.11(a)(1)(A) ...................................................................... 22

**Rules**

FED. R. CIV. P. 12(b)(1) ............................................................................................ 1, 7

FED. R. CIV. P. 12(b)(6) ................................................................... 1, 8, 11, 12, 13, 15

FED. R. CIV. P. 9(b) ........................................................... 1, 8, 9, 10, 11, 12, 14, 15, 16

Defendant America 250 Foundation (the "Foundation"), by and through counsel, pursuant to FED. R. CIV. P. 9(b), 12(b)(1), and 12(b)(6), submits the following Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint filed by Plaintiffs Renee Burchard ("Ms. Burchard"), Kirsti Garlock ("Ms. Garlock"), Anna Laymon ("Ms. Laymon"), and Keri Potts ("Ms. Potts") (collectively, "Plaintiffs"), *see* ECF No. 1 (Compl.), in its entirety, with prejudice.

## I.    <u>SUMMARY OF THE ARGUMENT</u>

Despite its substantial length, Plaintiffs' Complaint fails to articulate sufficient facts to set forth any cognizable claim. At bottom, the Complaint contains unsupported allegations and speculations regarding Plaintiffs' collective disagreements on management decisions during their employment with the Foundation.[1] Littered with conclusions, buzzwords, and ad hominem attacks on non-party individuals and companies, Plaintiffs ultimately fail to state any cognizable claims against the Foundation in their Complaint, which is subject to dismissal.

Plaintiff are four former female executives of the Foundation, which was created in 2019. *See* Compl. at 2.  As pled in their Complaint, Ms. Potts was employed at the Foundation for 6-months and Ms. Layman was employed for 9-months before they both voluntarily resigned on September 17, 2021.  *Id.* at ¶¶ 3, 4.  Ms. Burchard was employed for 19-months before voluntarily resigning on December 6, 2021.  *Id.* at ¶ 1.  Two days later, on December 8, 2021, Ms. Garlock voluntarily resigned after 4-months of employment as the Foundation's Chief Legal Officer.  *Id.* at ¶ 2.  In the Complaint, Plaintiffs allege the Foundation "retaliated against and subjected [them] to escalation hostility" after they complained and opposed "noncompliant, unlawful and/or

---

[1]  Indeed, the abject lack of facts, as opposed to speculation and legal conclusions, is underscored by the number of allegations predicated "on information and belief[,]" *see* Compl. at ¶¶ 47-48, 66, 70, 121, 161, 199, 203, 207, 214, 218, 220, 266, 289, 304, 331-32, and on "potential" or "possible" illegal or fraudulent activity, *see id.* at preamble, ¶¶ 43, 50-51, 70, 75, 83, 113, 125, 140, 143, 187, 190, 208, 236, 244-45, 247-48, 275, 281-82, 285, 310, 323, 326-27, 336, 338.

wasteful business practices that resulted in the potential squandering of federal funds; were subjected to a hostile work environment based on their gender; and were systematically and intentionally underpaid and tasked with the work of their better-paid male colleagues." *Id.* at 2-3. Plaintiffs further allege they were "constructively discharged and forced to resign from their respective positions because they could no longer participate in noncompliant, unlawful, and/or fraudulent use of taxpayers' funds, and… endure a toxic and volatile work environment." *Id.* at 3. Of course, aside from their own speculations, Plaintiffs fail to plead a plausible claim to avoid the Court's dismissal of their Complaint.

In the Complaint, Plaintiffs assert the following causes of actions against the Foundation:

**Count I:**    Violation of the False Claims Act (FCA)

**Count II:**   Pay Discrimination under the D.C. Human Rights Act (DCHRA)

**Count III:**  Gender Discrimination and Hostile Work Environment under the DCHRA

**Count IV:**   Wrongful Termination, or in the alternative, Constructive Discharge

**Count V:**    Negligent Infliction of Emotional Distress (NIED)

**Count VI:**   Defamation of Character

**Count IX:**   Defamation of Character – Defamation *Per Se* brought by Ms. Garlock and Ms. Burchard

A careful reading of Plaintiffs' Complaint reveals that none of their claims is alleged with sufficient facts to state a claim that is facially ***plausible*** - as opposed to merely ***conceivable*** or ***possible*** - under the pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiffs merely make a number of conclusory allegations, generally asserting they were forced to resign due to discriminatory, hostile work environment, and retaliatory reasons.  Nonetheless, legal conclusions – unsupported by factual allegations – are insufficient to render Plaintiffs' claims facially plausible.  Accordingly, the

Complaint is subject to dismissal and the Court should grant this Motion for the following reasons:

**First,** there has been no violation of the FCA and Plaintiffs' violation of the FCA claim (Count I) fails because Plaintiffs do not and cannot allege sufficient facts demonstrating that: (1) the Foundation submitted any false claims to the Government, (2) the Foundation knowingly violated the FCA, or (3) the alleged false claims were material to the Government's decision to reimburse the Foundation.  Plaintiffs' retaliation claim under § 3730(h) also fails because Plaintiffs do not allege they engaged in any protected activity to trigger the FCA's whistleblower protection provisions or that the Foundation retaliated against them because of engaging in those acts.

**Second,** Plaintiffs' gender-based pay disparity claim under the DCHRA (Count II) fails because Plaintiffs have not alleged a single comparator outside their protected class who performed equal work and received greater pay during their employment with the Foundation.

**Third,** Plaintiffs' DCHRA discrimination, retaliation, and hostile work environment claims based on gender (Count III) fails because: (1) the Complaint fails to allege facts, as opposed to legal conclusions, that plausibly suggests the Foundation discriminated against them ***based on gender***; (2) Plaintiffs have not suffered an adverse employment action as they each voluntarily resigned from employment; and (3) Plaintiffs fail to allege a "discrete act" of extreme conduct.

**Fourth,** Plaintiffs' wrongful termination claim (Count IV) fails because each of the Plaintiffs voluntarily resigned from employment.  Alternatively, Plaintiffs' constructive discharge claim also fails because Plaintiffs are unable to plead their working conditions were so intolerable that they had no option but to resign from their employment.

**Fifth,** Plaintiffs' NIED claim (Count V) fails because Plaintiffs do not allege in their Complaint any risk of physical injury or fear of their own safety, nor do they allege a special relationship with the Foundation that would entitle them to relief under D.C. law.

**Sixth and finally,** Plaintiffs' defamation of character claim (Count VI), and Ms. Burchard and Ms. Garlock's defamation *per se* claim (Count IX) both fail because the Complaint does not allege any of the required elements under D.C. law to avoid dismissal of their defamation claims.

For these reasons, Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

## II.   FACTUAL ALLEGATIONS[2]

Plaintiffs are four former executives of the Foundation, all of whom are women and voluntarily resigned from their employment in late 2021.  *See generally* Compl.  Founded in 2019, the Foundation is a non-profit corporation created to further Defendant U.S. Semiquincentennial Commission's (the "Commission") purpose of "facilitating, planning, developing, promoting, and coordinating observances and activities" that commemorate the 250th anniversary of founding the United States.  *Id*. at ¶¶ 5, 7, 10-11.[3]

In the Complaint, Plaintiffs generally allege that they made "repeated and vociferous objections to the cronyism, self-dealing, mismanagement of funds, ***potentially*** unlawful contracting practices and wasteful spending," which were "rebuffed and ignored" by leaders of the Foundation.  *Id*. at 3 (emphasis added).  In addition, Plaintiffs allege they were "belittled and humiliated in front of their co-workers, kept out of key decision-making meetings, usurped of resources and authority, systematically undermined and subjected to constant demeaning language."  *Id.* Plaintiffs further allege they were given "enormous workloads, and were forced to actually execute large portions of the duties that were the responsibilities of male co-workers, who

---

[2] Defendant denies the factual allegations contained in the Complaint.  However, on a motion to dismiss, a moving party must accept the opposing party's allegations of fact as stated, regardless of veracity.

[3] For the Court's reference, Plaintiffs provide in their Complaint a lengthy overview of the Foundation's purpose, formation, and organization, and its relationship with the co-Defendants. *See e.g., id.* at ¶¶ 12-32.

were paid more than Plaintiffs and/or enjoyed significantly fewer responsibilities and duties." *Id.*
Finally, Plaintiffs allege that from the Foundation's creation in 2019 to December 2021, only four
women served in executive leadership roles. *Id.* at ¶ 25. All four women are the Plaintiffs. *Id.*

### A.    Plaintiffs' Alleged Noncompliance, Fraud, Waste, and Abuse Concerns

In October 2021, Plaintiffs allege the Foundation hired an African-American male as its
Senior Vice-President (SVP), who was "not given any specific duties or even a job description."
*Id.* at ¶¶ 37-38.[4] Plaintiffs then "raised concerns about the hiring of someone without any specific
duties" and were "each told that the new SVP was hired as a political favor, and that it was a trade-
off for hiring a white male [Chief Executive Officer (CEO)]." *Id.* at ¶ 39. Plaintiffs further allege
that, their "concerns were ignored by Foundation and Commission leadership." *Id.* at ¶ 40.

Throughout 2021, Plaintiffs allege the volume of contracts at the Foundation increased and
as a result, their workload was "enormous." *Id.* at ¶¶ 41-42. Plaintiffs claim that as the "volume
of Foundation contracts increased, so too did [their] concerns with respect to many of the
contracts." *Id.* at ¶ 43. In this regard, Plaintiffs allege they observed, "several of the contracts were
with entities with which [Chairperson of the Commission Daniel DiLella ("Mr. DiLella")] and
[Executive Director of the Commission Frank Giordano ("Mr. Giordano")] had personal dealings
or relationships, [which] created a potential conflict of interest and/or had questionable prices and
services." *Id.* at ¶¶ 22, 43; *see also id.* at ¶ 47 ("On information and belief, Mr. Giordano and Mr.
DiLella are long-time associates and close personal friends."). Plaintiffs further allege these
contracts were "initially fashioned as '*pro bono*' contracts to evade the Foundation's RFP
process[,] but then morphed into lucrative paid contracts with no oversight." *Id.* at ¶ 44; *see also*

---

[4] In the Complaint, Plaintiffs do not allege whether they applied for the SVP position, the
duties and responsibilities of the SVP, the type of work the SVP completed, under which
department the SVP fell, or whether Plaintiffs' respective jobs were performed under similar
working conditions as the SVP.

*id.* at ¶¶ 69, 73, 75 (alleging a "potential conflict of interest"), 76. Finally, Plaintiffs claim they repeatedly attempted to "raise concerns about a contract because the pricing was inexplicable, or because the bidding process was improper" and "were shut down by senior leadership." *Id.* at ¶ 45.

In the Complaint, Plaintiffs generally allege that, "despite weekly meetings of executive staff to make important decisions, all final decisions were actually made by the Chairman's Group[.]" *Id.* at ¶¶ 64, 150.[5] Plaintiffs further allege, "the Chairman's Group" made certain decisions that only benefited individuals "with personal ties to [its] members… or specific Commissioners." *Id.* at ¶ 65; *see also id.* at ¶¶ 66 (alleging "on information and belief, the partners of the contracted Corporate Sponsorship Firm A were personal friends and associates of Mr. Giordano"), 70 (alleging "[u]pon information and belief, the only corporate partnership that [Corporate Sponsorship Firm A] produced was a $10 million contract with Social Media Company A that violated multiple Foundation strategies and policies, and was predicated on what [Ms. Burchard] was concerned was a potentially unlawful quid-pro-quo"), 181-185, 220, ("On information and belief, Mr. Giordano had a friendship with the partners of [Corporate Sponsorship Firm A], and signed them to a contract that gave them a 17% commission, with no competitive bid."), 221, 228.

---

[5] Plaintiffs allege the Chairman's Group "acted as a 'boys club,' freezing out the women who were given titles and large responsibilities, but no authority or input into key decisions of the Foundation" and included the following individuals: Mr. DiLella, Joseph Del Raso ("Mr. Raso") of TROUTMAN PEPPER, LLP (outside counsel for the Commission), Thomas McGarrigle ("Mr. McGarrigle") of REED SMITH, LLP (outside counsel for the Foundation), President and CEO Joe Daniels ("Mr. Daniels"), former Interim President and CEO and current Chief Operating Officer (COO) of the Foundation Scott Hommel ("Mr. Hommel"), and Mr. Giordano. *Id.* at ¶¶ 46, 53.

### B.   Plaintiffs' Retaliation and Hostile Work Environment Allegations

After raising their alleged concerns, Plaintiffs claim that the Foundation retaliated against them by "excluding them from further meetings about the contracts at issue, undermining and humiliating them with their colleagues and subordinates, and denigrating their work, all of which cumulatively created a hostile work environment." *Id.* at ¶ 49; *see also id.* at ¶¶ 86, 88-89, 91, 95, 97-99, 100-101, 130-134, 136-37.  Plaintiffs further allege their "work environment was so hostile and treacherous, that they chose to resign rather than be forced to continue working at an organization engaging in unethical practices." *Id.* at ¶ 50; *see also id.* at ¶¶ 51-52, 105-9, 141-42, 187-90.  Finally, Plaintiffs allege they attempted to be included in key decisions and decision-making at the Foundation, but were "shut-down, ignored, and retaliated against" and "routinely subjected to a work environment where the women were held to a harsher and more taxing standard than the men." *Id.* at ¶¶ 53-5.

From this core set of facts, the four Plaintiffs assert a litany of specious claims that all fail as a matter of law as discussed *infra*.

## III.   STANDARDS OF REVIEW

### A.   FED. R. CIV. P. 12(b)(1) Standard

Motions to dismiss for want of standing must be evaluated as a Rule 12(b)(1) motion. *See e.g., Steffan v. Cheney*, 733 F. Supp. 115, 116 (D.D.C. 1989).  Rule 12(b)(1) provides for dismissal where a court lacks subject matter jurisdiction over a plaintiff's claim. If the "irreducible constitutional minimum of standing" is not met, a court lacks subject matter jurisdiction over the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff bears the burden of proof to establish that she has standing and must show that she personally suffered an actual or imminent injury because of defendant's illegal conduct, and

that injury can be redressed by a favorable court decision. *Singletary v. Howard Univ.*, 314 F. Supp. 3d 330, 333 (D.D.C. 2018); *see also Steffan*, 733 F. Supp. at 117-9 (finding whether a plaintiff voluntarily resigned was a question of standing to be resolved by reviewing the pleadings).

### B.      FED. R. CIV. P. 12(b)(6) Standard

FED. R. CIV. P. 12(b)(6) provides for dismissal where an action fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 544).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The court "need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations," *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), or a "formulaic recitation of the elements of a cause of action," *Twombly,* 550 U.S. at 555.  Courts have a duty not to "conjure up unpleaded facts," *id.* at 562, but rather to dismiss "if the plaintiff fails to plead enough facts to state a claim for relief that is plausible on its face." *Bailey v. Verizon Comm'ns, Inc.*, 544 F. Supp. 2d 33, 36 (D.D.C. 2008) (internal quotations omitted).  To survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

### C.      FED. R. CIV. P. 9(b) Heightened Pleading Standard

Rule 9(b) applies a heightened pleading standard to fraud allegations under the FCA and requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b); *see also United States ex rel. Totten ("Totten") v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C. Cir. 2002).  To satisfy Rule 9(b), a

plaintiff must allege the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Health v. AT&T, Inc.* ("*Heath*"), 791 F.3d 112, 126 (D.C. Cir. 2015), *cert. denied sub nom., AT&T, Inc. v. United States ex rel. Heath*, No. 15-363, 2016 WL 3461577 (U.S. June 27, 2016).  This Court has explained that, to meet this heightened pleading standard, the plaintiff must set forth in detail the time, place, and manner of the alleged fraudulent scheme to defraud the Government. *Id.* at 123-24; *see also United States ex rel. Tran v. Computer Sciences Corp. ("Tran")*, 53 F. Supp. 3d 104, 105 (D.D.C. 2014) ("In an FCA action, Rule 9(b) requires the pleader to state the time, place, and content of the false misrepresentation, the fact misrepresented and what was retained or given up as a consequence of the fraud and individuals allegedly involved in the fraud.") (internal citations and quotations omitted).  Simply put, a plaintiff must describe the "fraudulent scheme in substantial detail" to provide defendants with "notice of the who, what, when, where, and how with respect to the circumstances of the fraud." *Id.* at 122-23 (internal citations and quotations omitted).

Based on the above standards and as demonstrated in detail below, Plaintiffs' Complaint must be dismissed in its entirety.

## IV.   LAW & ARGUMENT

### A.   Plaintiffs' FCA Claim (Count I) Must Be Dismissed As a Matter of Law.

In Count I, Plaintiffs cite to and reference the FCA, specifically 31 U.S.C. § 3729, and its retaliation provision, 31 U.S.C. § 3730(h), without alleging facts necessary to state a plausible claim and without the specificity necessary to satisfy Rule 9(b)'s heightened pleading standard for alleging false claims under the FCA.[6]  *See* Compl. at ¶¶ 240-50.

---

[6] Indeed, it is unclear whether Plaintiffs intend to raise a substantive claim of an FCA violation under 31 U.S.C § 3729, particularly because the Complaint does not plead any factual

1.      **Plaintiffs Fail to State a Claim under 31 U.S.C. § 3729.**

At the outset, the Complaint is devoid of any facts, let alone specific facts, to support Plaintiffs' bare allegation of a violation under either § 3729 or § 3730 of the FCA.

To withstand a motion to dismiss, Plaintiffs must allege facts sufficient to establish the following elements in support of their FCA claim: (1) the Foundation submitted a claim ***to the Government***, (2) the claim was false, and (3) the Foundation ***knew*** the claim was false.  *See United States v. First Choice Armor & Equip., Inc.*, 808 F. Supp. 2d 68, 74 (D.D.C. 2011). To be actionable under the FCA, a false claim also must be "material" to the Government's decision to pay the claim.  *See* 31 U.S.C. § 3729(b)(4); *see also Uni. Health Servs., Inc. v. United States ex rel Escobar ("Escobar")*, 136 S. Ct. 1989, 2002-3 (2016).

In their Complaint, Plaintiffs do not allege any facts to support their bare allegations of a violation under § 3729 of the FCA.  First, Plaintiffs allege no claims for payment to the Government, let alone any knowingly false claim.  *See generally* Compl.  Indeed, Plaintiffs' Complaint is unsupported by any factual allegations of a false claim, let alone the specificity required to show the type of particularity necessary to satisfy Rule 9(b)'s heightened pleading standard.  Specifically, Plaintiffs fail to plead any factual allegations regarding who at the Foundation submitted a claim for payment to the Government, the date of the claim, the amount of such claim, the allegedly fraudulent representation(s) in the claim, and the true state of facts that

---

allegations of the alleged false claims and because Plaintiffs do not satisfy any of the other conditions requisites necessary to comply with and state a substantive FCA claim. *See e.g.,* FED. R. CIV. P. 9(b) (requiring allegations of fraud, including fraudulent claims under the FCA, be pled with particularity); 31 U.S.C. § 3730(b)(1) (requiring a complaint by qui tam whistleblower to be filed in the name of the United States and the whistleblower); *id.* § 3730(b)(2) (requiring qui tam claims by private whistleblowers filed under seal, and only after the whistleblowers provided specific information to the Department of Justice).  Nonetheless, in an abundance of caution in the event that Plaintiffs are attempting to state a viable claim under the FCA, the Foundation addresses the pleading and procedural deficiencies that doom any attempt by Plaintiffs to assert an FCA cause of action under Count I of their Complaint.

renders the claim's representations false.  Rather, Plaintiffs make only vague references to a "potentially" false claim, *see e.g.,* Compl. at 2, ¶ 208, effectively admitting that Plaintiffs *never* had the factual information necessary to support an allegation of false or fraudulent claims submitted to the United States' government.  Rules 12(b)(6) and 9(b) are designed precisely to prevent these "vague theories in search of factual support" types of actions.

Aside from their own speculation, Plaintiffs fail to allege any facts to demonstrate that the Foundation made false demands or submitted any false records to the Government or any other governmental entity.  *See Totten*, 286 F.3d at 551 ("… the [FCA] proscribes only false 'claims' – that is, actual demands for money or property, *see* 31 U.S.C. §§ 3729(a)(1), (a)(3), 3729(c) – and 'false records or statements' used to induce such claims, *see* § 3729(a)(2).").  In other words, the FCA "attaches liability, not to underlying fraudulent activity, but to the claim for payment." *Id*. Nevertheless, the Complaint is riddled with "potentially" or "possible" allegations as to any purported fraudulent activity.  *See e.g.,* Compl. at 2-4, ¶¶ 43, 75, 83, 143, 190, 208, 244, 332; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are therefore insufficient to withstand a motion to dismiss."). Indeed, Plaintiffs fail to, at the very least, plead that the Government provided some portion of the money requested by the Foundation or the Government reimbursed the Foundation for any of amounts Plaintiffs allege that the Foundation falsely claimed.  *Totten*, 286 F.3d at 551.

Second, Plaintiffs fail to allege facts sufficient to show that the Foundation "knowingly" violated the FCA.  Under the FCA, a person acts "knowingly" if they: (1) have actual knowledge of the information, (2) act in deliberate ignorance of the truth or falsity of the information, or (3) act in reckless disregard of the truth or falsity of the information.  *See* 31 U.S.C. § 3729(b)(1)(A). The FCA does not "create liability merely for a [defendant's] disregard of government regulations

11

or improper internal policies unless, as a result of such acts, the provider knowingly asks the government to pay amounts it does not owe." *United States ex rel. Hockett v. Columbia/HCA Healthcare, Corp.*, 489 F. Supp. 2d 25, 70 (D.D.C. 2007) (internal quotations omitted).

To establish that the Foundation had the requisite scienter, Plaintiffs must plead plausible facts from which the Court may reasonably infer knowledge of the falsity. *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 51 (D.D.C. 2014). Plaintiffs fail to allege a single fact about the Foundation's purported knowledge of these alleged "false claims." Plaintiffs' allegations on the Foundation's purported knowledge of "potentially unlawful" conduct, which are based on their "information and belief[,]" is insufficient to avoid the dismissal of their FCA claim. *See e.g.,* Compl. at ¶¶ 43, 50-1, 70, 75, 83, 113, 125, 130, 143, 187, 190, 208, 236, 244-45, 247, 248, 275, 281-82, 285, 310, 323, 326-27, 332, 336, 338; *see also United States ex rel. Bender v. N. Am. Telecomms. Inc.* (*"Bender"*), 686 F. Supp. 2d 46, 53 (D.D.C. 2010) ("As a general rule, pleadings upon information and belief do not satisfy Rule 9(b)'s particularity requirement"). Plaintiffs cannot rely on conclusory allegations that merely track the statutory language, without providing any factual support. *See e.g.,* Compl. at ¶¶ 45, 51; *Iqbal*, 556 U.S. at 678.

Third, Plaintiffs fail to allege facts sufficient to show that the Foundation's purported false claim submissions were "material" to the Government's decision to pay the claim. *See Escobar*, 136 S. Ct. at 2002-3 (finding misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision to be actionable under the FCA). Facts to support the materiality element must be plausibly alleged under Rule 12(b)(6) and with the heightened particularity standard required under Rule 9(b), and dismissal for failure to plead such facts is entirely appropriate. *See e.g., Escobar*, 136 S. Ct. at 2003-4, n.6 (noting FCA claims may be dismissed at the pleading stage under Rules 12(b)(6) and 9(b) wherein

the complaint fails to allege facts supporting materiality). In addition, the standard for pleading materiality is demanding because the FCA is not "a vehicle for punishing garden-variety breaches of contract or regulatory violations. *Id.* at 2003. The fact that the Foundation may be required to abide by statute, regulation, or contract requirements (for example, federal contracting and procurement regulations – which are not specifically referenced or cited in the Complaint), without more, is insufficient to establish the materiality of compliance with such requirements. *Id.* at 2001 (finding "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment").

The Complaint should be dismissed because it is devoid of any factual allegations necessary to satisfy the materiality pleading requirements under the FCA. Aside from their conclusory allegations that the Foundation engaged in conduct "noncompliant, potentially unlawful and/or detrimental to the mission," *see e.g.,* Compl. at ¶ 51, the Complaint makes no factual allegations about the materiality of any purported false claims by the Foundation. Indeed, Plaintiffs fail to connect the dots between the Foundation and/or its employees' alleged conduct and the specific transactions submitted for reimbursement to the Government, and likewise fail to allege facts demonstrating why or how any of the purported fraudulent conduct was material to the Government's payments in those transactions. Conspicuously absent from the Complaint are any allegations regarding the relevant government agencies' decision to either pay or reject the Foundation's claims involving its non-compliance with federal contract practices. *See United States ex rel. Folliard v. Comstor Corp.*, 308 F. Supp. 3d 56, 87 (D.D.C. 2018) (dismissing complaint at the pleading stage for failure to satisfy Rule 12(b)(6) because "[w]ithout more than citations to the regulatory framework, the relator has failed to show that any alleged false claim was material to the government's decision to pay") (citing *Escobar*, 136 S. Ct. at 2003 ("A

misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment.")).

### a.     *Plaintiffs Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard.*

Moreover, Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading standard in relation to their FCA claim against the Foundation.  "[T]o prevent parties from bringing fraud claims as pretext for the discovery of unknown wrongs," a complaint alleging fraud must be "specific enough to allow the defendants to prepare their defenses."  *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 25 (D.D.C. 2010) (internal citations and quotations omitted); *see also Heath*, 791 F.3d at 123.  The Complaint is devoid of any facts regarding how the Foundation's purported fraudulent scheme actually operated or who specifically was involved as required by Rule 9(b)'s heightened pleading standard.  *See generally* Compl.

First, Plaintiffs provide no reliable indicia to support a strong inference that the Foundation actually submitted claims to the Government for payment under false pretenses.  *See Heath*, 791 F.3d at 126.  It is not enough to plead that Plaintiffs simply investigated "potential" or "possible" "false claims" without providing any details as to the information discovered in their alleged investigation to support the conclusory allegation that the Foundation violated the FCA.  Instead, the Complaint must state facts supporting Plaintiffs' allegation that the claims submitted were false.  *See Totten*, 286 F.3d at 552.  Here, Plaintiffs' Complaint contains their collective disagreement with management decisions and centers their FCA cause of action on "potential" or "possible" false claims, based on their collective "information and belief."  *See e.g.,* Compl. at ¶¶ 43, 50-1, 70, 75, 83, 113, 125, 130, 143, 187, 190, 208, 236, 244-45, 247, 248, 275, 281-82, 285, 310, 323, 326-27, 332, 336, 338; *see also Bender*, 686 F. Supp. 2d at 53 (dismissing plaintiff's

FCA claim for failure to satisfy Rule 9's heightened pleading standard).  While pleadings on "information and belief" require an allegation that "the necessary information lies within the defendant's control[,]" *see Kowal*, 16 F.3d at 1279 n.3, Plaintiffs are required to plead "a lack of access to necessary information in the complaint." *United States ex rel. Davis v. Dist. of Columbia*, 591 F. Supp. 2d 30, 37 (D.D.C. 2008).  Furthermore, "such allegations must also be accompanied by a statement of facts upon which the allegations are based." *Kowal*, 16 F.3d at 1279 n. 3.  Neither of these conditions are satisfied here.

In addition, Plaintiffs' allegations are unsupported by indicia of reliability and Plaintiffs' FCA claim falls into the category of "opportunistic plaintiffs who have no significant information to contribute of their own" that the FCA discourages. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn ("Springfield")*, 14 F.3d 645, 649 (D.C. Cir. 1994).[7]  As such, the Complaint lacks facts to support the allegation of a scheme by the Foundation in violation of the FCA, let alone pleads in "substantial detail" facts necessary to provide the Foundation with "notice of the who, what, when, where, and how" of the purported scheme supposedly operated. *Tran,* 53 F. Supp. 3d at 122-23.  Without reliable indicia or any facts plausible alleging the essential elements of their FCA claim, the Complaint must be dismissed for failure to satisfy Rules 12(b)(6) and 9(b).

Second, Plaintiffs fail to plead facts with particularity required under Rule 9(b) to demonstrate that the Foundation fraudulently certified compliance with any statutes, regulations, or policies of a government agency. *See e.g., United States ex rel. Conteh v. IKON Office Sols., Inc.*, 103 F. Supp. 3d 59, 69 (D.D.C. 2015) ("The vague and conclusory allegations offered in support of the plaintiff/relator leads the Court to the conclusion that he wants to engage in a fishing

---

[7] *See also United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003) ("The False Claims Act is intended to encourage individuals who are either close observers or involved in the fraudulent activity to come forward, and is not intended to create windfalls for people with secondhand knowledge of the wrongdoing.")

expedition, with the hope that he will discover incriminating information he does not possess nor has any credible reason to believe exists. … Accordingly, the plaintiff/relator has not satisfied the heightened pleading requirement of Rule 9(b).").  Indeed, the Complaint generally alleges certain false claims were submitted, *see e.g.,* Compl. at ¶ 83, 105, 175, but fails to allege exactly when the purported falsities were made, by whom or to whom the purported falsities were made (*i.e.,* to which vendors or government agencies or officials), regarding which contracts, or the format and circumstances of the alleged submission of false claims to the Government.  *Heath*, 791 F.3d at 123-4; *Tran*, 53 F. Supp. 3d at 115.

Finally, the Complaint is impermissibly vague concerning any allegedly fraudulent act or omission by the Foundation, including: (a) the content of the alleged falsities the Foundation purportedly submitted (*i.e.,* what the Foundation allegedly falsely claimed to the Government), (b) when and the frequency with which the Foundation submitted the false claims, (c) to whom the claims were allegedly made and whether they were reimbursed, (d) whether Plaintiffs contend that **both** the Commission and the Foundation submitted alleged false claims, (e) the persons involved in which alleged claims submissions, (f) the format and circumstances through which the alleged claims were submitted, and (g) the relevant time period and corresponding factual support.  *See generally* Compl.; *see also Si v. Laogai Res. Found.*, 71 F. Supp. 3d 73, 93-4 (D.D.C. 2014) (dismissing claims of false certification that "merely offer[ed] the value allegation" that certain certifications needed to be made, and for failing to "provide any details as to the specific contents of the certification, the timing of the certification, how many times this certification was made over the course of [plaintiff's] employment or, indeed, who made the certification of Defendants' behalf"); *United States ex rel. Folliard v. Hewlett-Packard Co.*, 272 F.R.D. 31, 34-35 (D.D.C. 2011) (dismissing plaintiff's FCA claims because, *inter alia*, the complaint "fails to identify who

made the false claims"); *Bender,* 686 F. Supp. 2d at 52 (finding a "complaint must make specific allegations against each individual defendant rather than collective allegations" under Rule 9(b)'s standard to guarantee defendants sufficient information to prepare response).

In light of the foregoing, Plaintiffs' FCA claim (Count I) must be dismissed in its entirety.

### 2.      Plaintiffs Fail to State a Claim under 31 U.S.C. § 3730(h)(2).

Plaintiffs' claim of retaliation under the FCA must also fail because Plaintiffs' allegations of purported retaliation do not pertain to any submission of a claim for federal government funds. Moreover, Plaintiffs do not allege any facts showing that they engaged in any protected activity, or that the Foundation retaliated against them "because of those acts" to support an FCA retaliation claim under 31 U.S.C. § 3730(h).

In support of their whistleblower protection claim under the FCA, Plaintiffs only allege they "each actively investigated, sought information regarding, questioned other employees and attempted to verify invoices and claims for payment that they reasonably believed were fraudulent, noncompliant, and/or without merit."  Compl. at ¶ 242.  Plaintiffs further allege they "each raised their concerns to their immediate supervisors and superiors of what they believed to be false claims, and that they strongly objected to the payment of such claims." *Id.* at ¶ 243. Thereafter, Plaintiffs claim they were "retaliated against in the form of the creation and escalation of a hostile and toxic work environment." *Id.* at ¶ 245. Specifically, Plaintiffs allege they were "removed from meetings, deprived of information and resources, isolated and undermined by their superiors, humiliated, and denigrated in front of colleagues." *Id.* at ¶ 246.

Section 3730(h) of the FCA provides retaliatory protection for employees who may be considering exposing their employer's fraud.  *See* 31 U.S.C. § 3730(b).  To demonstrate FCA retaliation, Plaintiffs must allege facts showing that (1) they engaged in conduct that was "in

furtherance of" a suit under § 3730 (*i.e.,* Plaintiffs engaged in protected activity), and (2) the Foundation retaliated against them "because of those acts." *United States ex rel. Schweizer v. Oce N.V. ("Schweizer")*, 677 F.3d 1228, 1237 (D.C. Cir. 2012) (internal citations and quotations omitted). The Complaint fails to allege facts sufficient to show either required element. As such, Plaintiffs' FCA retaliation claim is without merit and must be dismissed.

Under the first element, the FCA protects "lawful acts done… in furtherance of an action under [the FCA,]" *i.e.,* steps taken antecedent to a FCA proceeding. 31 U.S.C. § 3730(h)(1). The FCA also insulates from retaliation in situations wherein a plaintiff acts in furtherance of "other efforts to stop one or more violations" of the FCA. *Id.* "Dissatisfaction with one's treatment on the job is not enough" to establish the first element in a FCA retaliation claim. *Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019). "Nor is an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations." *Id.* (internal citations and quotations omitted). Instead, "to be covered by the [FCA], the plaintiff's investigation must concern false or fraudulent claims submitted for federal funding." *Id.*

As demonstrated in Section (IV)(A)(1), *supra,* Plaintiffs' Complaint is unsupported by factual allegations sufficient to show that the Foundation submitted any false claims to the Government for reimbursement and thus, Plaintiffs have not pled that they engaged in any protected activity to trigger protection under § 3730(h) of the FCA. *See Hoyte v. American Nat. Red Cross*, 518 F.3d 61, 70 (D.C. Cir. 2008) (affirming district court's dismissal of FCA claim because plaintiff did not assert a viable FCA action). Simply stated, Plaintiffs' alleged investigation could not reasonably lead to a viable FCA action under § 3729 (so as to support their whistleblower claim under § 3730(h)) because the activity they claim to have been investigating did not and could not amount to a violation of the FCA. *See Hoyte*, 518 F.3d at 70 ("There was

not even a 'distinct possibility' that her claim against [defendant] might become viable before or at trial because under any view of the facts as alleged the claim lacked one of the legal requirements for a reverse false claim charge: the defendant must have an 'obligation to pay or transmit money or property to the Government,' 31 US.C. § 3729(a)(7)."). Plaintiffs have not and cannot, consistent with their Rule 11 obligations, affirmatively plead (with the requisite particularity, or otherwise) that the Foundation committed fraud.  Indeed, Plaintiffs' failure is evident based on the allegations pled in the Complaint, which is replete with references of "potential" fraud, rather than actual fraud.  *See e.g.,* Compl. at 2, ¶ 208.  In the absence of facts supporting the viable FCA cause of action, an FCA retaliation claim cannot stand.  *Hoyte*, 518 F.3d at 70.  Moreover, merely informing one's supervisors of a problem is not "protected activity" and therefore, does not afford Plaintiffs whistle-blower protection under the FCA.  *See Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) ("An employee does not engage in protected conduct if he merely informs a supervisor of a problem"); *see also id.* (noting, "an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations" does not amount to protected conduct).  To recover under § 3730(h), it is not sufficient that Plaintiffs further an action under some other statutory scheme or, as here, a non-existent action.  Because Plaintiffs fail to plead a viable FCA action in their Complaint, their § 3730(h) claim must be dismissed as a matter of law.

Second, in addition to alleging they engaged in protected activity (Plaintiffs did not), Plaintiffs must also allege they were wrongfully terminated (alternatively, constructively discharged) "because of" the protected activity.  *See United States ex rel. Schweizer v. Oce N. Am.*, 956 F. Supp. 2d 1, 12 (D.D.C. 2013).  "To succeed on [their] [§ 3730(h)] claim, [Plaintiffs] must show that retaliation for protected activities was a "but-for" cause of the adverse action." *Id.* at 14. Here, Plaintiffs fail to allege they suffered any adverse action "because of" a protected activity.

Not once in the Complaint does Plaintiffs allege that the Foundation retaliated against them or subjected them to any adverse action after raising their purported concerns regarding the Foundation's operation, or that their engagement in any protected activity was the "but-for" cause of an adverse action.

Moreover, Plaintiffs fail to allege any facts showing that they engaged in activity outside their normal job responsibilities. *See Schweizer*, 677 F.3d at 1238 (finding plaintiff's retaliation claim could not succeed unless she "alerted [her employer] of her protected conduct by acting outside her normal job responsibilities, notifying a party outside the usual chain of command, advising [her employer] to hire counsel, or taking 'any [other] action which a factfinder reasonably could conclude would put [her employer] on notice that litigation [was] a reasonable possibility'"). For example, in their Complaint, Plaintiffs allege that Ms. Burchard, who held the title of Chief Administrative Officer, was responsible for setting up "finance, accounting, HR/payroll, and organization structure, policies and procedures, and operation of the Foundation." Compl. at ¶¶ 58, 60. Plaintiffs continue to allege that Ms. Burchard repeatedly raised her concerns "about these and many other questionable, wasteful, expensive, duplicative, or problematic contracts with Mr. Hommel and Mr. Daniels[.]" *Id.* at ¶ 77. In light of the foregoing, it was part of Ms. Burchard's normal job duties to assist the CEO and COO with the Foundation's operation and to notify leadership with issues regarding the operation's efficiency. *See e.g.*, U*nited States ex rel. Ivanov v. Exelis, Inc.*, 41 F. Supp. 3d 50, 54 (D.D.C. 2014) (granting defendant's motion to dismiss and dismissing plaintiff's FCA claim because "without any facts showing that [plaintiff] engaged in activity outside his normal job responsibilities, [defendant] could not have more been on notice that he was engaged in protected activity, let alone motivated by it"). Moreover, Ms. Burchard's alleged disclosures would not have indicated that she was pursuing an FCA claim, but that she was

simply performing her job as Chief Administrative Officer.  Thus, there are no facts alleged by Plaintiffs that the Foundation had any notice that they were engaged in protected activity when they reported their alleged concerns that could support a FCA retaliation claim.[8]

Finally, as discussed in Sections (IV)(C) and (D), *infra*, Plaintiffs fail to allege facts showing that they suffered an adverse employment action in support of their FCA retaliation claim. *See* Compl. at ¶¶ 110, 143, 191, 239.  Even assuming Plaintiffs presented facts showing that they engaged in protected activity and the Foundation had knowledge of that protected activity (Plaintiffs fail on both counts), they still must show that they were terminated or suffered an adverse employment action because of their engagement in the alleged protected activity. Once again, Plaintiffs have failed in pleading any adverse action in the Complaint.

---

[8] The following includes additional examples of Plaintiffs' failure to sufficiently plead the second element of their FCA retaliation claim: (i) Plaintiffs allege that Ms. Garlock, who held the position of Chief Legal Officer and was instructed to report directly to the CEO, *see* Compl. at ¶ 118, was responsible for providing legal and business advice to the Foundation, *id.* at ¶ 120. Here, Plaintiffs allege that Ms. Garlock raised concerns and/or objections to the CEO and the COO about "contemplated agreements" "in an attempt to mitigate legal risks where possible," *id.* at ¶ 127, along with her concerns on expanding the size of the Foundation's Board, per Mr. Daniels' instruction, *id.* at ¶ 130; (ii) Plaintiffs allege that Ms. Potts, who held the position of Vice-President of Communications and Public Relations and reported to the COO, was responsible for, *inter alia*, drafting press releases for the Foundation, *id.* at ¶¶ 4, 148.  Here, Plaintiffs allege Ms. Potts asked Mr. Hommel about terminating the Foundation's contract with Communications Firm A for budgetary reasons, *id.* at ¶¶ 159-160, and also raised concerns regarding the Foundation's contract with Social Media Company A in light of "its promise of exclusive announcement rights that would prevent most media outlets from coverage opportunities," *id.* at ¶ 183; and (iii) Plaintiffs allege that Ms. Laymon, who held the position of Vice-President of Programs and Planning, *id.* at ¶ 193, and was responsible for program planning, *id.* at ¶ 194.  Here, Ms. Laymon expressed her concerns regarding certain Commissioners and their role with the Foundation, along with concerns about excessive spending, *id.* at ¶ 199, Mr. Giordano's salary, *id.* at ¶ 200, a partnership agreement with Defendant American Battlefield Trust ("ABT"), *id.* at ¶ 201, Lobby Firm A's contract with the Foundation, *id.* at ¶ 207, and the Foundation's communication firm, *id.* at ¶ 209.

In sum, all of the foregoing concerns and/or disclosures allegedly reported to the Foundation by Plaintiffs pertained to their respective job functions.  As such, Plaintiffs fail to allege that the Foundation had any notice that they were engaged in any alleged protected activity, yet alone were motivated by their engagement that could support a retaliation claim under the FCA.

Indeed, Plaintiffs allege that they each voluntarily resigned from their employment with the Foundation.  *See* Compl. at ¶¶ 110, 143, 191, 239.  Voluntarily resignations do not equate to an adverse action.[9]  *See Brown*, 828 F. Supp. 2d at 1 (finding wrongful termination claim without merit because plaintiff resigned from her employment); *see also Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007) ("In order to meet the 'materially adverse' standard [in a retaliation claim], a plaintiff must suffer some "objectively tangible harm.").  Because Plaintiffs did not suffer any adverse employment action, they failed to plead adequate facts to sustain an FCA retaliation claim.

In light of the foregoing, Plaintiffs' retaliation claim under the FCA, specifically 31 U.S.C. § 3730(h) fails as a matter of law and must be dismissed accordingly.

### B.    Plaintiffs' Pay Discrimination Claim under the DCHRA (Count II) Must Be Dismissed As A Matter of Law.

In Count II, Plaintiffs allege the Foundation violated the DCHRA by engaging in discriminatory pay practices based on gender.  *See* Compl. at ¶¶ 251-59.  Claims of unequal pay under the DCHRA are governed by the standards of the Equal Pay Act.  *See e.g., Hawley v. Blackboard, Inc.*, No. CIV.A. 03-656 (GK), 2005 WL 513496, at *8 (D.D.C. Mar. 3, 2005) (citing *Howard Univ. v. Best*, 484 A.2d 958, 984 (D.C. 1984)); *see also* D.C. Code § 2-1402.11(a)(1)(A).  A plaintiff who alleges that she was unlawfully paid less than a man must establish that the "employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  *Howard Univ.*, 484 A.2d at 984; *see also George Washington*

---

[9] The D.C. Circuit defines adverse employment actions as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Brown v. Georgetown Univ. Hosp.*, 828 F. Supp. 2d 1, 8 (D.D.C. 2011).

*Univ. v. Violand*, 940 A.2d 965, 979 (D.C. 2008) (finding proof of "equal work" requires "equal skill, effort, and responsibility" under similar conditions for a DCHRA pay discrimination claim).

Here, Plaintiffs fail to allege a single male comparator in their Complaint. Plaintiffs have identified no comparator who performed equal work **and** received greater pay. Plaintiffs broadly allege that the Foundation paid them unlawfully less than their male colleagues were paid. *See e.g.,* Compl. at ¶ 253.[10]    At most, Plaintiffs identify the following "comparators" in their Complaint: (i) an unidentified African-American SVP, *id.* at ¶ 38 ("He was, however, given a higher salary and title than each of the Plaintiffs."); and (ii) Ms. Laymon's "male colleagues," *id.* at ¶ 238 (alleging Ms. Laymon "was being paid less than her male colleagues, indeed, was among the lower paid members of the executive team"). As demonstrated by the foregoing allegations, Plaintiffs fail to plead any individuals outside their protected class whose positions required "equal skill, effort, and responsibility, which are performed under similar working conditions." *Howard Univ.*, 484 A.2d at 984; *see also Savignac v. Day*, 539 F. Supp. 3d 107, 117 (D.D.C. 2021) ("Most significantly, Defendants are entitled to know what skills, efforts, and responsibilities [Plaintiff] contends define the 'equal work' that, in her view, required equal pay."). None of the Plaintiffs held the position of SVP and Plaintiffs fail to identify whether Ms. Laymon's "male colleagues" performed work under similar conditions or that any of the Plaintiffs' responsibilities were similar to the alleged comparators' working conditions. *See e.g.,* Compl. at ¶¶ 60 (alleging Ms. Burchard was responsible for executing the administrative functions at the Foundation), 118 (alleging Ms. Garlock was employed as the Foundation's Chief Legal Officer), 148 (alleging Ms. Potts was responsible for, *inter alia,* drafting press releases for the Foundation), 195 (alleging Ms. Laymon was the Vice-President of Programs and Planning at the Foundation).

---

[10]   Interestingly, Ms. Laymon is the only Plaintiff who pled specific allegations in support of Count II. *See* Compl. at ¶ 238.

Since Plaintiffs have failed to plead facts sufficient to show that, the skills, effort, and responsibilities required of them and male employees at the Foundation were substantially equal, Plaintiffs fail to sufficiently allege pay discrimination based on gender in violation of the DCHRA. In light of the foregoing, Plaintiffs' gender-based DCHRA pay disparity claim fails as a matter of law and must be dismissed accordingly.

### C.   Plaintiffs' Discrimination, Retaliation, and Hostile Work Environment Claims under the DCHRA (Count III) Must Be Dismissed As A Matter of Law.

In Count III, Plaintiffs allege the Foundation discriminated, retaliated, and subjected them to a hostile work environment based on gender in violation of the DCHRA. *See* Compl. at ¶¶ 260-269. Specifically, Plaintiffs allege they were "given an unreasonable workload, repeatedly marginalized in team meetings, denied staff and resources, isolated and ignored, and spoken in an antagonistic and demeaning manner, and harshly and openly criticized in front of colleagues." *Id.* at ¶ 263. Plaintiffs further allege the "requests were made of [them] that were never made to their male colleagues, and [they] were expected to do the work of their male colleagues." *Id.* at ¶ 264. Contrary to the foregoing allegations, Plaintiffs' DCHRA claims fail and are subject to dismissal.

### 1.   Plaintiffs' Discrimination Claim under the DCHRA Fails.

In the absence of direct evidence of discrimination, which is not alleged in Plaintiffs' Complaint, Plaintiffs must rely on the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Clemmons v. Acad. for Educ. Dev.*, 70 F. Supp. 3d 282, 294 (D.D.C. 2014) (noting, in analyzing a claim of employment discrimination under the DCHRA, this Court looks to Title VII jurisprudence). Here, Plaintiffs fail to allege sufficient facts to articulate a claim for gender discrimination under *McDonnell Douglas*'s burden-shifting scheme.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. To establish a *prima facie* case of discrimination, Plaintiffs must prove by

a preponderance of the evidence that: (1) they were within a protected class; (2) they suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Easaw v. Newport,* 253 F. Supp. 3d 22, 26 (D.D.C. 2017). After Plaintiffs establish a *prima facie* case, the burden then shifts to the Foundation to present some legitimate, non-discriminatory reason for their employment separation. *McDonnell Douglas*, 411 U.S. at 802. If the Foundation does so, Plaintiffs must then prove that the legitimate reason offered by their former employer is pretext for discrimination. The D.C. Circuit has "been clear [] that at the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a *prima facie* case." *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (internal quotations and citations omitted). Nevertheless, "the plaintiff must still allege sufficient facts to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (stating, "allegations must go beyond an unadorned, the-defendant-unlawfully-harmed-me accusation")).

Any fair reading of the Complaint demonstrates that Plaintiffs fail to allege facts – as opposed to legal conclusions – that plausibly suggests the Foundation discriminated against them based on gender. *See e.g.,* Compl. at ¶¶ 47-48, 66, 70, 121, 161, 199, 203, 207, 214, 218, 220, 266, 289, 304, 331-32. Putting aside the foregoing conclusory and speculative allegations in their Complaint, Plaintiffs' gender-based discrimination allegations essentially boil down to the following: (1) in or around October 2021, the Foundation hired an African-American male as its SVP, who was not given any specific duties or even a job description and was hired as a "political favor," *id.* at ¶¶ 37-39; (2) since the Foundation's inception until each of Plaintiffs' resignations, all positions of "actual power and authority" at the Foundation and the Commission "have been held exclusively by men," *id.* at ¶ 33; (3) Mr. Daniels' refusal to assign former Chief

Administrative Officer Ms. Burchard's administrative tasks to COO Mr. Hommel "because of her gender," *id.* at ¶¶ 92-94, and his alleged sexist comments, including that Ms. Burchard was "insufficiently loyal to him and his personal success[,]" "signif[ying] that she was not a 'team player[,]'" *id.* at ¶¶ 101, 103; *see also id.* at ¶ 139 (alleging Mr. Daniels also asked Ms. Garlock to "plead her personal loyalty to him and be loyal in his individual success – or there would be no place for her on his team") (emphasis omitted); (4) Mr. Hommel's failure to take action in a dispute between Ms. Laymon and partners of the Corporate Sponsorship Firm A, *id.* at ¶ 224, who made certain "sexist" remarks, which Plaintiffs fail to specify; and (5) the Foundation's failure to hire a woman CEO after Dr. Rucci resigned, *id.* at ¶¶ 35, 154, 157, 237.  Finally, Plaintiffs generally allege that certain executives at the Foundation, including Mr. Daniels, "never spoke to any male employee in such a manner," *id.* at ¶ 104, and that Plaintiffs were expected to do the work of their male colleagues," *id.* at ¶ 264; *see also id.* at ¶ 276 (alleging their efforts "were ignored, in part, because of their gender").  None of these allegations, alone or collectively, are sufficient to withstand dismissal of their claims.

First, there is nothing to support a causal inference that gender was a motivating factor in the foregoing circumstances, other than Plaintiffs' conclusory allegations.  *See e.g., id.*, at ¶¶ 52, 94, 237.  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" at the pleading stage and cannot sustain Plaintiffs' discrimination claim.  *Slate v. Public Defender Serv.,* 31 F. Supp. 3d 277, 298 (D.D.C. 2014) (quoting *Iqbal*, 556 U.S. at 678).  In their Complaint, Plaintiffs fail to show "by contrast [] how [male employees] were treated by Defendant," and that they were "treated differently because of [their] gender."  *Id.*; *see also Staropoli v. Donahoe*, 923 F. Supp. 2d 11, 20 (D.D.C. 2013), *aff'd*, No. 13-5070, 2013 U.S. App. LEXIS 16068 (D.C. Cir. 2013).  Plaintiffs' allegations of

discrimination based on their gender derive from their generally vague, yet collective disagreements of leadership's decisions. The Complaint is completely devoid of any factual allegations as to how male employees were treated differently and fails to plead any facts to show that the alleged differential treatment is ***based on gender***. *See Slate*, 31 F. Supp. 3d at 298 (dismissing Plaintiff's gender discrimination claims under DCHRA for failing to sufficiently plead a causal link between his termination and gender). Here, Plaintiffs simply allege that they reported their concerns and oppositions to CEO Mr. Daniels and/or COO Mr. Hommel as part of their respective responsibilities as executives (which they allege were ignored by leadership for various reasons), yet fail to plead a causal link between the Foundation's decision to ignore their concerns and their gender. *See e.g.* Compl. at ¶ 266 (claiming discriminatory conduct on behalf of Mr. Daniels based on "information and belief" that Mr. Daniels "did not make such a demand of the male executives of the Foundation"); *see also id.* at ¶ 113 (alleging former CEO Dr. Rucci also understood that "the Foundation had a desperate need for processes and policies to be developed to ensure against conflicts of interest and allow for competitive bidding and diversity in all Foundation efforts").

Second, Plaintiffs fail to plead that they suffered an adverse employment action as they each voluntarily resigned from employment. *Id.* at ¶¶ 110, 143, 191, 239. An employee suffers an adverse employment action if they experience "materially adverse consequences affecting the terms, conditions, or privileges of employment … such that a reasonable trier of fact could find objectively tangible harm." *Valles-Hall v. Center for Nonprofit Advancement,* 482 F. Supp. 2d 118, 145 (D.D.C. 2007). "Mere threats of termination do not rise to the level of adverse employment action because they result in no materially adverse consequences or objectively tangible harm." *Id.* (internal quotations omitted). In their Complaint, Plaintiffs do not assert that

they suffered any adverse action that affected the "terms, conditions, or privileges" of their employment, or at the very least, a tangible workplace consequence. *See Lewis v. District of Columbia*, 885 F. Supp. 2d 421, 428 (D.D.C. 2012) (finding a discrete set of events that "though annoying and inconvenient, do not constitute materially adverse action").  Plaintiffs specifically fail to allege any "significant change" in their respective employments, and there are no allegations in the Complaint regarding their hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits. *Clemmons*, 70 F. Supp. 3d at 302 ("Although a less obvious harm may also qualify as a materially adverse action, it must not be unduly speculative.") (internal quotations omitted).  Indeed, Plaintiffs do not allege they applied to the SVP or CEO positions, the Foundation failed to promote them in any capacity, they were assigned significantly different responsibilities, or that the Foundation caused any significant changes in their benefits and/or compensation during their employment. *See generally* Compl.

In sum, the Complaint is completely devoid of any allegations that would bolster the conclusory assertion that the Foundation discriminated against Plaintiffs based on gender during their employment.  Plaintiffs' scant factual allegations simply do not add up to a plausible claim of discrimination under the DCHRA.  In light of the foregoing, Plaintiffs' gender-based discrimination claim under the DCHRA fails as a matter of law and must be dismissed accordingly.

### 2.    Plaintiffs' Retaliation Claim under the DCHRA Fails.

To establish a *prima facie* case of retaliation under the DCHRA, Plaintiffs must demonstrate that (1) they engaged in a statutorily protected activity; (2) the Foundation took an adverse employment action; and (3) there is a causal relationship between the two.  *See Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 75 (D.D.C. 2007); *Mdondji v. InterPark, Inc.*, 768 F. Supp. 263,

286 (D.D.C. 2011) (noting retaliation claims under the DCHRA are analyzed in the same manner as claims arising under Title VII). In their Complaint, Plaintiffs allege the Foundation retaliated against them after raising "warnings and concerns about Foundation activities" by marginalizing, devaluing, underpaying, ignoring, under-resourcing, and overworking Plaintiffs "because of their gender." Compl. at ¶¶ 267-68.

As demonstrated in detail in Section (IV)(C)(1), *supra*, Plaintiffs fail to plead an adverse employment action in support of their DCHRA claims. Moreover, Plaintiffs fail to allege a causal relationship between their engagement in any protected activity and the Foundation's purported discriminatory treatment. *See e.g., id.* at ¶ 267 ("Plaintiffs assert that their warnings and concerns about Foundation activities were ignored *in part*, because of their gender.") (emphasis added); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation… which requires that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). In their Complaint, Plaintiffs fail to plead "but-for" causation in support of their DCHRA retaliation claims against the Foundation. *See* Compl. at ¶ 267. Indeed, Plaintiffs' assertions are the hallmark of conclusory allegations and are nothing more than their subjective beliefs. *Id.* at ¶¶ 267-68.

In light of the foregoing, Plaintiffs' retaliation claim under the DCHRA fails as a matter of law and must be dismissed accordingly.

### 3.  Plaintiffs' Hostile Work Environment Claim under the DCHRA Fails.

To establish a hostile work environment claim, Plaintiffs must show that (1) they are members of a protected class; (2) they endured harassment that was severe or pervasive such that it altered a term, condition, or privilege of employment; and (3) the harassment was based on their

membership in the protected class.  *See e.g., Walden v. Patient-Centered Outcomes Research Institute,* 177 F. Supp. 3d 336, 344 (D.D.C 2016) (dismissing hostile work environment claim because plaintiff pled the same allegations upon which she relied her disparate treatment and retaliation claims). A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal citations and quotations omitted).  In determining if such an environment exists, this Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (internal citations and quotations omitted).  These hostile acts "must be adequately connected to each other… as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

As a general matter, courts in this Circuit "frown on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim." *Walden*, 177 F. Supp. 3d at 344 (quoting *Dudley v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 164 (D.D.C. 2013)); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims … are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.").  Plaintiffs' allegations – which are the same ones upon which their disparate treatment and retaliation claims are based – fail to support their hostile work environment claim.  *See* Compl. at ¶¶ 260-269.  In their Complaint, Plaintiffs do not plead they were subjected to the kind of "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *Walden*, 177 F. Supp. 3d at 344 (internal citations and quotations omitted). Instead, Plaintiffs collectively plead the same allegations in support of their discrimination, retaliation, and hostile work environment claims under the DCHRA, including, *inter alia*, that they were excluded from meetings, undermined and humiliated in front of their colleagues, denigrated for their work, and isolated/ignored by certain co-executives of the Foundation. *See e.g.,* Compl. at ¶¶ 49, 53-55, 64. Moreover, Plaintiffs fail to allege a "discrete act" to sufficiently plead a claim for hostile work environment. *See Munro v. LaHood*, 839 F. Supp. 3d 354, 365 (D.D.C. 2012) ("And mere reference to alleged disparate acts of discrimination cannot be transformed, ***without more***, into a hostile work environment.") (emphasis in the original) (internal citations omitted). As such, Plaintiffs' reiteration of the same factual allegations upon which all of their DCHRA claims are based is insufficient and Plaintiffs fail to establish a "discrete act" demonstrating extreme conduct as required in hostile work environment claims. *See Walden*, 177 F. Supp. 3d at 345.

In light of the foregoing, Plaintiffs' hostile work environment claim under the DCHRA fails as a matter of law and must be dismissed accordingly.

### D. Plaintiffs' Wrongful Termination or in the Alternative, Constructive Discharge Claim (Count IV) Must Be Dismissed For Lack of Standing.

In Count IV, Plaintiffs allege they were wrongfully terminated from employment. *See* Compl. at ¶¶ 270-78. First and foremost, Plaintiffs' wrongful termination claim must be dismissed because they have not plead facts sufficient to show that their allegations of wrongful termination is facially plausible. *See Iqbal*, 556 U.S. at 678. As a result, Plaintiffs have not carried their burden to prove that this Court has subject matter jurisdiction over their claims. *See Steffan*, 733 F. Supp. at 117-9.

To assert a wrongful termination claim, Plaintiffs must demonstrate that they were in fact terminated by their employer. *See Clay v. Howard Univ.*, 128 F. Supp. 3d 22, 27 (D.D.C. 2015).

31

Plaintiffs fail in pleading this initial requirement. Compl. at ¶¶ 110, 143, 191, 239.  Furthermore, the law in the District of Columbia and this Court is clear that a voluntary resignation cannot be used as the basis for a wrongful termination claim. *See e.g., Brown*, 828 F. Supp. 2d at 1; *see also Knight v. Mabus*, 134 F. Supp. 3d 348, 357 (D.D.C. 2015) (finding a voluntary resignation "does not amount to an adverse employment action by [an] employer"); *Aliotta v. Blair*, 614 F.3d 556, 566 (D.C. Cir. 2010) (finding an individual who voluntarily resigns from employment "suffer[s] no adverse employment action").  Thus, without having been terminated, Plaintiffs' wrongful termination fails as a matter of law and must be dismissed accordingly.

Alternatively, Plaintiffs have also failed to plead a constructive discharge claim. "An actionable constructive discharge claim requires a showing that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Brown*, 828 F. Supp. 2d at 10.  In the D.C. Circuit, "a finding of constructive discharge depends on whether the employer deliberately made working conditions intolerable and drove the employee out." *Id.* (internal quotations omitted).  "The test is objective and federal courts have established a relatively high threshold for what a reasonable employee would tolerate." *Id.*

As discussed in Section (IV)(C)(3), *supra*, Plaintiffs have failed to plead sufficient facts to demonstrate a hostile environment claim under the DCHRA. *See Walden*, 177 F. Supp. 3d at 346 ("Given that the court has found that she has failed to plead sufficient facts to make out a hostile work environment claim, logic compels the finding that she has not sufficiently pleaded a constructive discharge claim."); *see also Robinson v. Ergo Solutions, LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015) (finding constructive discharge claims require "something more" than a hostile work environment claim); *Bishopp v. Dist. of Columbia*, 788 F.2d 781, 790 (D.C Cir. 1986) ("A

finding of constructive discharge requires a finding of intentional discrimination [or retaliation] plus a finding of aggravating factors that suggest that the complainant was driven to quit."). As with their hostile work environment claim, Plaintiffs cannot merely rest on the same factual pleadings upon which their disparate treatment and retaliation claims are based. *Walden*, 117 F. Supp. 3d at 346-46.

Additionally, Plaintiffs fail to allege any facts sufficient to demonstrate that they were constructively discharged from employment. *See Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 78 (D.D.C. 2006) ("The kinds of situations where courts have upheld constructive discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination."). Indeed, this Court has noted that courts ordinarily regard as voluntary an employee's decision to quit out of concern for her health. *Id.* (citing *Spence v. Maryland Cas. Co.*, 995 F. 2d 1147, 1156 (2d Cir. 1993) ("[T]he fact that an employee develops stress-related ill health from the demands of his voluntarily undertaken position or from criticisms from his performance, and as a result determines that health considerations mandate his resignation, does not normally amount to a constructive discharge by the employer.")); *see also* Compl. at ¶ 275 (alleging "Plaintiffs opted to resign their employment because the stress and anxiety").

In light of the foregoing, Plaintiffs' wrongful termination claim (or alternatively, constructive discharge claim) fails as a matter of law and must be dismissed accordingly.

### E. Plaintiffs' NIED Claim (Count V) Must Be Dismissed As A Matter of Law.

In Count V, Plaintiffs allege NIED on behalf of the Foundation. *See* Compl. at ¶¶ 279-287. In support thereof, Plaintiffs allege that the Foundation "owed them a duty to ensure that they were not forced to engage in unlawful or harmful conduct." *Id.* at ¶ 280. Contrary to their allegations, Plaintiffs fail to plead a NIED claim as a matter of law.

Under D.C. law, a plaintiff may recover for NIED under two theories. *Islar v. Whole Foods Market Group, Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016). Under the first theory – the "zone of danger" test – Plaintiffs may recover for "mental distress if [the Foundation's] actions caused [them] to be in danger of physical injury and if, as a result, [Plaintiffs] fear from [their] own safety." *Id.* (internal quotations omitted). Alternatively, under the second theory, Plaintiffs may "recover if, among other things, there is a 'special relationship' between the parties that 'necessarily implicates [Plaintiffs'] emotional well-being.'" *Id.* (quoting *Hedgepath v. Whitman Walker Clinic*, 22 A.3d 789, 811-12 (D.C. 2011)). Here, Plaintiffs fail to plead either theory to avoid the dismissal of their NEID claim. *See* Compl. at ¶¶ 279-287. Plaintiffs do not allege (nor can they) any risk of physical injury in their Complaint or fear of their own safety. *Id.* As such, Plaintiffs fail to allege any "zone of danger" liability on behalf of the Foundation. Additionally, Plaintiffs have not alleged that they and the Foundation had anything other than an arm's length, employer-employee relationship, foreclosing any "special relationship" liability. *See Islar*, 217 F. Supp. 3d at 268 (dismissing NEID claim for failure to plead any facts under its two theories).

In light of the foregoing, Plaintiffs' NEID claim fails as a matter of law and must be dismissed accordingly.

**F.  Plaintiffs' Defamation Claim (Count VI) and Ms. Burchard and Ms. Garlock's Defamation *Per Se* Claim (Count IX) Must Be Dismissed As A Matter of Law.**

In Counts VI and IX, Plaintiffs allege defamation of character, and Ms. Burchard and Ms. Garlock allege defamation *per se*, respectively. *See* Compl. at ¶¶ 288-297, 330-341. To establish a defamation claim in the District of Columbia, Plaintiffs must demonstrate:

> (1) that [the Foundation] made a false and defamatory statement concerning [Plaintiffs]; (2) that [the Foundation] published the statement without privilege to a third party; (3) that the fault of [the Foundation] in publishing the statement amount to at least negligent; and (4) either that the statement was actionable as a matter of law

> irrespective of special harm or that its publication caused [Plaintiffs] special harm.

*LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 51 (D.D.C. 2012) (citing *Jankovic v. Int'l Crisis Group,* 494 F.3d 1080, 1088 (D.C. Cir. 2007)).  For defamation *per se* claims, the elements "mirror those of defamation, with defamation *per se* occurring only where a defendant has falsely accused the plaintiff of committing a crime or other unlawful act." *Couch v. Verizon Commc'ns, Inc.,* No. 20-2151 (RJL), 2021 WL 4476698, at *5 (D.D.C. Sept. 30, 2021).

### 1.    Plaintiffs' Defamation of Character Claim (Count VI) Fails.

First and foremost, Plaintiffs have failed to identify a single, purported false and defamatory statement made about them by the Foundation.  *See* Compl. at ¶¶ 288-297.  Moreover, Plaintiffs fail to plead the element of publication in support of their defamation claim against the Foundation.  To prove the publication element, "a cause of action for defamation requires proof of publication of the defamatory statement to a third party." *LeFande*, 864 F. Supp. 2d at 51.  Here, Plaintiffs allege that, "[o]n information and belief, on or about February 19, 2022, Chairman DiLella sent a formal letter to the America 250 Foundation Board of Directors, Senator Casey, Congresswoman Watson Coleman, and Congressman Evans implying that Plaintiffs initiated contact with the Foundation without provocation as an attempt to extort America 250."  Compl. at ¶ 289.  Nowhere in Plaintiffs' Complaint do they allege that anyone on behalf of ***the Foundation*** published this purported defamatory statement to a third-party.  *Id.* at ¶ 22 (alleging Mr. DiLella is an employee of the Commission and holds the position of Chairperson); *see also id.* at ¶¶ 291 (alleging Mr. DiLella "provided the recipients with information"), 294 (alleging Mr. DiLella "knew that the information provided… was untrue"), 295 (alleging "Mr. DiLella, who provided

the false narrative[,] engaged in defamation").  As such, Plaintiffs' defamation claim instantly fails and should be dismissed for failure to plead the element of publication.[11]

Finally, Plaintiffs fail to plead the alleged defamatory statement with particularity.  *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996) ("In order to plead defamation, a plaintiff should allege specific defamatory comments, by pleading the time, place, content, speaker, and listener of the alleged defamatory matter.") (internal citations and quotations omitted); *see also Watwood v. Credit Bureau, Inc.*, 68 A.2d 905, 906 (D.C. 1949) (dismissing complaint that did not set forth verbatim language or the substance of the allegedly defamatory matter).  "'The use of *in haec verba* pleadings on defamation charges is favored in federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings.'"  *Hoffman v. Hill and Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (quoting *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir. 1979)).  Here, Plaintiffs merely allege that this purported letter sent by the Commission's Chairperson, "impl[ied] that Plaintiffs initiated contact with the Foundation without provocation as an attempt to extort America 250."  Compl. at ¶ 289.  Without

---

[11] To the extent Plaintiffs allege in their Complaint that the Foundation published the purported defamatory statement to the Commission (they did not), who then republished the statement to, *inter alia*, members of Congress, Plaintiffs' defamation claim is still subject to dismissal under the "common interest" privilege.  *See e.g., Bell-Boston v. Manpower Int'l Staffing Agency,* 61 F. Supp. 3d 74, 77 (D.D.C. 2014).  Under the common interest privilege, a statement is protected if "it is (1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty, (3) to a person who has such a corresponding interest or duty." *Id.* (internal quotations omitted). "Such a privilege may be found in circumstances where an individual's professional qualifications are discussed." *Id.* As pled in the Complaint, the Foundation was created for the purpose of furthering the Commission's mission and is overseen by the Commission, "which was created by Congress to design and implement programming of the celebration of the semiquincentennial of the founding of the United States[.]" Compl. at 2. Thus, the Commission and members of Congress have a "common interest" in any purported statements made by the Foundation concerning its employees and therefore, any purported statement on behalf of the Foundation alleged by Plaintiffs is protected under the common interest privilege.  *See Bell-Boston*, 61 F. Supp. 3d at 77 ("Whether a statement is privileged is also a question of law.").

providing any additional information as to the exact language on behalf of Mr. DiLella (Chairperson of the Commission) alleged to have been defamatory, Plaintiffs' defamation claim is based on inference and conjecture (or "on information and belief") with no supporting factual allegations. Given the heightened pleading standard in defamation actions, Plaintiffs' allegations are insufficient to state a claim and are subject to dismissal.  *See Hoffman*, 777 F. Supp. at 1005.

In light of the foregoing, Plaintiffs' defamation claim (Count VI) fails as a matter of law and must be dismissed accordingly.

### 2.    Ms. Burchard and Ms. Garlock's Defamation *Per Se* Claim (Count IX) Fails.

Similar to Count VI, Ms. Burchard and Ms. Garlock also fail to plead the alleged defamatory statement with particularity in support of their defamation *per se* claim.  *Watwood*, 68 A.2d at 906. Not only is their defamation *per se* claim based on inference and conjecture (or "on information and belief"), *see* Compl. at ¶¶ 331-32, but they also fail to plead any supporting factual allegations.  Nowhere in their Complaint do Ms. Burchard and Ms. Garlock allege to whom this purported defamatory statement was published or who, specifically, at the Foundation published this statement to this unidentified third-party.  *Id.* at ¶ 331 (alleging, "one or more Foundation executives were interviewed by a reporter from a national news organization and syndicated newspaper"); *see also Foretich v. Glamour*, 753 F. Supp. 955, 965 (D.D.C. 1990) ("Media coverage of matters of contemporary public concern may not be so readily brought to account in defamation.").  In fact, not once in their Complaint do they allege who the purported speaker or listener is of the alleged defamatory matter.  *See e.g.,* Compl. at ¶¶ 333 (alleging "a Foundation executive provided the reporter with documents"), 337, 338; *Caudle*, 942 F. Supp. at 638; *see also Hoffman*, 777 F. Supp. at 1005 (dismissing plaintiff's defamation claim because he did "not set forth the content of the alleged statement, the speaker, or the listener").

In light of the foregoing, Ms. Burchard and Ms. Garlock's defamation *per se* claim (Count IX) fails as a matter of law and must be dismissed accordingly.

V.     **CONCLUSION**

For all of the foregoing reasons, Defendant America 250 Foundation respectfully requests that the Court grant this instant Motion and dismiss Plaintiffs Renee Burchard, Kirsti Garlock, Anna Laymon, and Keri Potts's Complaint, *see* ECF No. 1, in its entirety, with prejudice.

Dated: April 7, 2022                                    Respectfully submitted,


                                                        By: /s/ Tiffany din Fagel Tse
                                                        Brian A. Scotti, Esq. (D.C. Bar No. 497125)
                                                        Tiffany F. Tse, Esq. (D.C. Bar No. 1601147)
                                                        GORDON REES SCULLY MANSUKHANI, LLP
                                                        1101 King Street, Suite 520
                                                        Alexandria, Virginia 22314
                                                        (T): 202-399-1009
                                                        (F): 202-800-2999
                                                        bscotti@grsm.com
                                                        ttse@grsm.com

                                                        *Counsel for Defendant America 250 Foundation*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 7, 2022, a copy of the foregoing was served electronically via the Court's ECF system to:

Donald Temple, Esq.
Pamela Keith, Esq.
Temple Law Offices
1310 L Street NW, Suite 750
Washington, D.C. 20005
DTempleLaw@gmail.com
PamelaKeithTempleLaw@gmail.com

*Counsel for Plaintiffs*

/s/ Tiffany din Fagel Tse
Tiffany din Fagel Tse