**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RENEE BURCHARD,** *et al.,* | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Case No.: 1:22-cv-00497-JMC** |
| | : | |
| **AMERICA 250 FOUNDATION,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF DEFENDANT AMERICA 250 FOUNDATION'S**
<u>**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**</u>

Brian A. Scotti, Esq. (D.C. Bar No. 497125)
Jenna N. Van Middelem, Esq. (D.C. Bar No. 1742487)
GORDON REES SCULLY MANSUKHANI, LLP
1101 King Street, Suite 520
Alexandria, Virginia 22314
(T): 202-399-1009
(F): 202-800-2999
bscotti@grsm.com
jvanmiddelem@grsm.com

*Counsel for Defendant America 250 Foundation*

## <u>TABLE OF CONTENTS</u>

**Page**

I.     SUMMARY OF THE ARGUMENT……………….………………………………...1

II.    FACTUAL ALLEGATIONS…………………………………………………...…5

    A.    Plaintiffs' Alleged Noncompliance, Fraud, Waste, and Abuse Concerns………...6

    B.    Plaintiffs' Retaliation and Hostile Work Environment Allegations……………...7

III.    STANDARDS OF REVIEW………………………………………………….…...7

    A.    FED. R. CIV. P. 12(b)(1) Standard………………………………………..….7

    B.    FED. R. CIV. P. 12(b)(6) Standard…………………………………….……8

    C.    FED R. Civ P. 9(b) Heightened Pleadings Standard……………………………9

IV.    LAW & ARGUMENT…………………………………………………….…...10

    A.    Plaintiffs' FCA Claim (Count I) Must Be Dismissed As A Matter of Law…..….10

        1.    Plaintiffs Fail to State a Claim under 31 U.S.C. § 3729…………………10

            a.    Plaintiffs Fail to Satisfy Rule 9(b)'s Heightened Pleadings Standard……………………………………………… …...15

        2.    Plaintiffs Fail to State a Claim under 31 U.S.C. § 3730(h)(2)…………..18

    B.    Plaintiffs' Pay Discrimination Claim under the DCHRA (Count II) Must Be Dismissed As A Matter of Law…………………………………………………..23

    C.    Plaintiffs' Discrimination, Retaliation, and Hostile Work Environment Claims under the DCHRA (Count III) Must Be Dismissed As A Matter of Law…………………………………………………………….. .…25

        1.    Plaintiffs' Discrimination Claim under the DCHRA Fails…………… …25

        2.    Plaintiffs' Retaliation Claim under the DCHRA Fails……………………29

        3.    Plaintiffs' Hostile Work Environment Claim under the DCHRA Fails………………………………………………………...……30

    D.    Plaintiffs' Wrongful Termination or in the Alternative, Constructive Discharge

Claim (Count IV) Must Be Dismissed For Lack of Standing……………………..32

E.      Plaintiffs' Negligence Claim (Count V) Must Be Dismissed As A Matter of Law……………………………………………………………………………35

F.      Plaintiffs' NEID Claim (VI) Must Be Dismissed As A Matter of Law…… ……36

G.      Ms. Burchard and Ms. Garlock's Defamation *Per Se* Claim (Count X) Must Be Dismissed As a Matter of Law………………………………….……….……37

V.      CONCLUSION……………………………………………………...……………………39

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ablibalogun v. First Coast Security Solutions, Inc.*, 67 F. Supp.3d 211 (D.D.C 2014)…………...33

*Aliotta v. Blair*, 614 F2d 57 (D.C. Cir. 2010)….…………………………………………………33

*Ascroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………....…3, 8, 12, 13, 25, 26, 32

*Bailey v. Verizon Comm'ns, Inc.*, 544 F. Supp. 2d 33 (D.D.C. 2009)……………………………8

*Baird v. Gotbaum*, 662 F.3d 1246 (D.C. Cir. 2011)……………………………………………...31

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)………………………………..…………3, 8

*Bell-Boston v. Manpower Int'l Staffing Agency*, 61 F. Supp 3d 74 (D.D.C 2014)………..………35

*Bishopp v. Dist. Of Columbia*, 788 F.2d 781 (D.C. Cir. 1986)…………………………..………34

*Brown v. Georgetown Univ. Hosp.*, 828 F. Supp. 2d 1 (D.D.C. 2011)…………..………23, 32, 33

*Caudle v. Thomason*, 942 F. Supp. 635 (D.D.C. 1996)…………………………………………38, 37

*Clemmons v. Acad. for Educ. Dev.*, 70 F. Supp. 3d 22 (D.D.C 2014)………………..……25, 29

*Couch v. Verizon Commc'ns, Inc.*, No. 20-2151 (RJL)
2021 WL 4476698 (D.D.C. Sept. 30, 2021)……………………………………………………37

*Dudley v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 2d 141 (D.D.C. 2013)…………31

*Easaw v. Newport*, 253 F. Supp. 3d 22 (D.D.C 2017)……………………………………..………26

*Foretich v. Glamour*, 753 F. Supp 955 (D.D.C. 1990)…………………………………………37

*George Washington Univ. v. Violand*, 940 A.2d 965 (D.C. 2008)………………..……23, 24

*Hawley v. Blackboard, Inc.*,
No. CIV.A 03-656 (GK), 2005 WL 513496 (D.D.C. Mar 3, 2005)………………………………23

*Hedgepath v. Whitman Walker Clinic*, 22 A.3d 789 (D.C. 2011)…………………………..………33

*Hoffman v. Hill and Knowlton, Inc.* 777 F.Supp. 1003 (D.D.C. 1991)………………………36, 37

*Hoyte v. American Nat. Red Cross*, 518 F.3d 61 (D.C. Cir. 2008)…………………..…19, 20

*Islar v. Whole Foods Market Group, Inc.*, 217 F.Supp. 3d 261 (D.D.C 2016)………..……36, 34

*Jankovic v. Int'l Crisis Group*, 494 F.3d 1080 (D.C. Cir. 2007)……………………………34

*Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55 (D.D.C 2006)……………………………………34

*Knight v. Mabus,* 134 F. Supp. 3d 348 (D.D.C. 2015)……………………………………………33

*Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)……………………..………..8,14, 16

*LeFande v. District of Columbia*, 864 F. Supp. 2d 44 (D.D.C. 2012)……………………….…34, 35

*Lester v. Natsios*, 290 F. Supp. 2d 11 (D.D.C. 2003)…………………………………………….31

*Lewis v. District of Columbia*, 885 F. Supp. 2d 241 (D.D.C. 201)………………………………28

*Lujan v. Defenders of Wildlife*, 504 U.S. 792 (1992)…………………………………….………8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)………………………………...…..25

*Mdondji v. InterPark, Inc.*, 768 F. Supp. 3d 354 (D.D.C. 2011)…………………………………29

*Munro v. LaHood*, 839 F. Supp. 3d 354 (D.D.C. 2012)………………………………………..…32

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)…………………………………………37

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986)………………………..………37

*Rattigan v. Gonzalez*, 503 F. Supp. 2d 56 (D.D.C. 2007)……………………………………….29

*Robinson v. Ergo Solutions*, LLC, 85 F. Supp. 3d 275 (D.D.C. 2015)…………………………34

*Savignac v. Day*, 539 F. Supp. 3d 107 (D.D.C. 2021)…………………………………………24

*Shekoyan v. Sibley Int'l*, 409 F.3d 414 (D.C. Cir. 2005)………………………...……….20

*Si v. Laogai Res. Found.*, 71 F. Supp. 3d 73 (D.D.C. 2014)………………………….……….17

*Simms v. District of Columbia*, 699 F. Supp. 3d 330 (D.D.C. 2018)…………………….……8, 19

*Singletary v. Howard Univ.*, 314 F. Supp. 3d 277 (D.D.C. 2014)………………………………28

*Slate v. Public Defender Serv.*, 31 F. Supp. 3d 277 (D.D.C. 2014)………………….………28

*Snead v. U.S.*, 595 F. Supp. 658 (D.D.C. 1984)…………………………………..……….35, 36

*Spence v. Maryland Cas. Co.*, 995 F. 2d 1147 (2d Cir. 1993)……………………………34

*Staropoli v. Donahoe*, 923 F. Supp. 2d 11 (D.D.C. 2013)
Aff'd, No. 13-5070, 2013 U.S. App. LEXIS 16068 (D.C. Cir. 2013)…………….…………28

*Steffan v. Cheney*, 733 F. Supp. 115 (D.D.C. 1989)…………………………………...7, 8, 31

*Time, Inc. v. Firestone*, 424 U.S. 448 (1976)………………………………….…………………39

*Uni. Health Servs., Inc., v. United States ex rel Escobar*
136 S. Ct. 1989 (2016)…………………………………………..……….10, 13, 14

*United States ex rel. Bender v. N. Am. Telecomms. Inc.*
686 F. Supp. 2d 46 (D.D.C. 2010)……………………………………………………13, 17
*United States ex rel. Conteh v. IKON Office Sols., Inc.*, 103 F. Supp. 3d 59 (D.D.C. 2015)……16

*United States ex rel. Davis v. Dist. Of Columbia*, 591 F. Supp. 2d 30 (D.D.C. 2008)……………16

*United States ex rel. Folliard v. CDW Tech. Servs., Inc.*,
722 F. Supp. 2d 20 (D.D.C. 2010)……………………………………………...……………..14, 15

*United States ex rel. Health v. AT&T, Inc.*
791 F.2d 112 (D.C. Cir. 2015)
cert. denied sub nom., *AT&T, Inc. v. United States ex rel. Health*
No. 15-363
2016 WL 3461577 (U.S. June 27. 2016)………………………………………..…………9, 15, 17

*United States ex rel. Hockett v. Columbia/HCA Healthcare, Corp*.,
489 F. Supp. 2d 25 (D.D.C. 2007)………………………………………………………………..12

*United States ex rel. Ivanov v. Exelis, Inc.*,
41 F. Supp. 3d 50 (D.D.C. 2014)…………………………………………………………………21

*United States ex rel. Kinney v. Stoltz*,
327 F.3d 671 (8th Cir. 2003)……………………………………………………..………………16

*United States ex rel. Landis v. Tailwind Sports Corp*.,
51 F. Supp 3d 9 (D.D.C. 2014)…………………………………………………………………..13

*United States ex rel. Schweizer v. Oce N.V.*
677 F.3d 1228 (D.C.Cir. 2012)………………………………………………………..19, 20, 21

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*
14 F. 3d 645 (D.C. Cir. 1994)……………………………………………………………………16

*United States ex rel. Totten v. Bombardier Corp*.,
286 F. 3d 542 (D.C. Cir. 2002)………………………………………………..………9, 12, 15

*United States ex rel. Tran v. Computer Sciences Corp*.,
53 F. Supp. 3d 104 (D.D.C. 2014)………………………………………………………9, 16, 16

*United v. First Choice Armor & Equip., Inc.*,
808 F. Supp. 2d 68 (D.D.C. 2011)………………………………………………………………10

*Univ. Of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013)………………...……….30

*Valles-Hall v. Center for Nonprofit Advancement*, 482 F. Supp. 2d 118 (D.D.C. 2007)….…….28

*Walden v. Patient-Centered Outcomes Research Institute*,
177 F. Supp. 3d 336  (D.D.C 2016)……………………………………………………………31, 34

*Watwood v. Credit Bureau, Inc.*, 68 A. 2d 905 (D.C. 1949)………………………………………38

*Wiley v. Glassman*, 511 F.3d 151 (D.C. Cir. 2007)……………………………………………23

*Zimmerman v. Al Jazeera America, LLC,* 246 F. Supp.3d 257 (D.D.C. 2017)……..…………37

**Statutes**

31 U.S.C § 3729……………………………………………………………………10, 11, 19

31 U.S.C. § 3729(a)(1)………………………………………………………………...………12

31 U.S.C. § 3729(a)(2)…………………………………………………………………...……12

31 U.S.C. § 3729(a)(3)……………………………………………………………………...…12

31 U.S.C. § 3729(a)(7)………………………………………………………………….………20

31 U.S.C. § 3729(b)(1)(A)……………………………………………………………………...12

31 U.S.C. § 3729(b)(4)…………………………………………………………….…………10

31 U.S.C. § 3729(c)………………………………………………………………….…………11

31 U.S.C. § 3730…………………………………………………...……………………10, 18

31 U.S.C. § 3730(b)…………………………………………………………...……………18

31 U.S.C. § 3730(b)(1)…………………………………………………………...…………10

31 U.S.C. § 3730(b)(2)…………………………………………………………….…………10

31 U.S.C. § 3730(h)………………………………………………….……………10, 19, 20, 23

31 U.S.C. § 3730(h)(1)………………………………………………………...……………19

31 U.S.C. § 3730(h)(2)………………………………………………………………………18

31 U.S.C. § 2-1402.11(a)(1)(A)……………………………………………………………...23

**Rules**

FED. R. CIV. P. 12(b)(1)………………………………………………………...………1, 7

FED. R. CIV. P. 12(b)(6)………………………………………………………1, 8, 11, 13, 16

FED. R. CIV. P. 9(b)………………………………………….……………1, 3, 9, 10, 11, 12, 13, 14, 15, 16, 18

Defendant America 250 Foundation (the "Foundation"), by counsel, pursuant to FED. R. CIV. P. 9(b), 12(b)(1), and 12(b)(6), submits the following Memorandum of Points and Authorities in support of its Motion to Dismiss the Amended Complaint (ECF No. 19) filed by Plaintiffs Renee Burchard ("Ms. Burchard"), Kirsti Garlock ("Ms. Garlock"), Anna Laymon ("Ms. Laymon"), and Keri Potts ("Ms. Potts") (collectively, "Plaintiffs").[1]

## I.    SUMMARY OF ARGUMENT

Despite its substantial length, including the additional of new factual allegations,[2] Plaintiffs' Amended Complaint fails to articulate sufficient facts to set forth any cognizable claim against the Foundation. At bottom, the Amended Complaint contains unsupported allegations and speculations regarding Plaintiffs' collective disagreements on management decisions during their employment with the Foundation.[3] Littered with conclusions, buzzwords, and disparaging

---

[1] Throughout Plaintiffs' Amended Complaint, the Foundation and the Commission are referred to collectively as "America 250." *See* Am. Compl. at p. 2 ("The Foundation and Commission are hereinafter referred to collectively as 'America 250'"), ¶¶ 45, 76, 78, 80, 95, 123, 125-26, 134, 137, 186, 192, 234, 238, 244, 282, 302, 307, 310, 317, 326-27, 344,-47, 360, 365, 367-69, 373, 375-79, 381, 383, 482, and 519.

This is an inappropriate way to plead because the Foundation and the Commission are two separate and distinct legal entities. Contrary to the requirements of Fed. R. Civ. P. 8, this does not place the Foundation or the Commission on adequate notice of the acts or omissions Plaintiffs attribute to each.

[2] The additional allegations in Plaintiffs' Amended Complaint do not alter the core allegations made against the Foundation. *See generally* Am. Compl. Rather, the additional allegations include new facts pertaining to new or other parties (Am. Compl. at ¶¶ 8-11, 24-29, 36-53, 56-58, 64-65, 77, 179-82, 3016-15, 365-70, 386-89, 402-05, 416-18) and the legislation governing the Commission, the Commission's control over the Foundation, and Plaintiffs' employment status. *See id*. at ¶¶ 15-17, 21-23, 30-33.

[3] Indeed, the abject lack of facts, as opposed to speculation and legal conclusions, is underscored by the number of allegations predicated "on information and belief[,]" *see* Am. Compl. at ¶¶ 58, 94-95, 107, 118, 195, 244, 304, 314, 320, 331, 335-37, 371, 424, 486, and 515-16, and on "potential" or "possible" illegal or fraudulent activity, *see id.* at Introduction at pp. 3-4, ¶¶ 90, 97-98, 124, 133, 141, 186, 199, 204, 220, 224, 295, 374, 379, 396, 398-99, 444-45, 448, 454-55, 460, 492, 507, 510-11 and 521.

relationships with non-party companies, Plaintiffs ultimately fail to state any cognizable claims against the Foundation in their Amended Complaint, which is subject to dismissal.

Plaintiffs are four former female executives of the Foundation, which was created in 2019. *See* Am. Compl. at p. 2. As pled in their Amended Complaint, Ms. Potts was employed at the Foundation for 6-months and Ms. Layman was employed for 9-months before they both voluntarily resigned on September 17, 2021. *Id.* at ¶¶ 3-4. Ms. Burchard was employed for 19-months before voluntarily resigning on December 6, 2021. *Id.* at ¶ 1. Two days later, on December 8, 2021, Ms. Garlock voluntarily resigned after 4-months of employment as the Foundation's Chief Legal Officer. *Id.* at ¶ 2.

In the Amended Complaint, Plaintiffs allege the Foundation "retaliated against and subjected [them] to escalation hostility" after they complained and opposed "noncompliant, unlawful and/or wasteful business practices that resulted in the potential squandering of federal funds; were subjected to a hostile work environment based on their gender; and were systematically and intentionally underpaid and tasked with the work of their better-paid male colleagues." *Id.* at Introduction at p. 3. Plaintiffs further allege they were "constructively discharged and forced to resign from their respective positions because they could no longer participate in noncompliant, unlawful, and/or fraudulent use of taxpayers' funds, and… endure a toxic and volatile work environment." *Id.* Of course, aside from their own speculations, Plaintiffs fail to plead a plausible claim to avoid the Court's dismissal of their Amended Complaint.

In the Amended Complaint, Plaintiffs assert the following causes of actions against the Foundation:

**Count I:**      Violation of the False Claims Act (FCA)

**Count II:**     Pay Discrimination under the D.C. Human Rights Act (DCHRA)

Count III:    Gender Discrimination and Hostile Work Environment under the DCHRA[4]

Count IV:    Wrongful Termination, or in the alternative, Constructive Discharge

Count V:    Negligence

Count VI:    Negligent Infliction of Emotional Distress ("NIED")

Count X:    Defamation of Character – Defamation *Per Se* brought by Ms. Garlock and Ms. Burchard

A careful reading of Plaintiffs' Amended Complaint reveals that none of their claims are alleged with sufficient facts to state a claim that is facially ***plausible*** - as opposed to merely ***conceivable*** or ***possible*** - under the well-settled pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Plaintiffs merely make a number of conclusory allegations, generally asserting they were forced to resign due to discriminatory and/or retaliatory reasons.  Nonetheless, legal conclusions – unsupported by factual allegations – are insufficient to render Plaintiffs' claims facially plausible.  Accordingly, the Amended Complaint is subject to dismissal and the Court should grant this Motion for the following reasons:

**First,** there are insufficient factual allegations to support the proposition that the Foundation acted in violation of the FCA, particularly under the heightened pleading standard pursuant to Fed. R. Civ. P. 9(b).  Plaintiffs' FCA claim (Count I) fails because Plaintiffs do not and cannot allege sufficient facts demonstrating that: (1) the Foundation submitted any false claims to the Government; (2) the Foundation knowingly violated the FCA; or (3) the alleged false claims were material to the Government's decision to reimburse the Foundation.  Plaintiffs' retaliation claim under § 3730(h) also fails because Plaintiffs do not allege they engaged in any protected

---

[4] Plaintiffs appear to vaguely allege retaliation under the DCHRA, which is also addressed *infra*.

activity to trigger the FCA's whistleblower protection provisions or that the Foundation retaliated against them because of engaging in those acts.

**Second,** Plaintiffs' gender-based pay disparity claim under the DCHRA (Count II) fails because Plaintiffs have not alleged a single comparator outside their protected class who performed equal work and received greater pay during their employment with the Foundation.

**Third,** Plaintiffs' DCHRA discrimination and hostile work environment claims based on gender (Count III) fails because: (1) the Amended Complaint fails to allege facts, as opposed to legal conclusions, that plausibly suggests the Foundation discriminated against them ***based on gender***; (2) Plaintiffs did not suffer an adverse employment action because they each voluntarily resigned from employment; and (3) Plaintiffs fail to allege a "discrete act" of extreme conduct or sufficiently pervasive conduct to support a hostile work environment claim.

**Fourth,** Plaintiffs' common law wrongful termination claim (Count IV) fails because each of the Plaintiffs voluntarily resigned from employment.  Alternatively, Plaintiffs' constructive discharge claim also fails because Plaintiffs are unable to plead their working conditions were so objectively intolerable that they had no option but to resign from their employment.

**Fifth,** Plaintiffs' negligence count (Count V) fails because Plaintiffs fail to allege a cognizable legal duty.

**Sixth,** Plaintiffs' NIED claim (Count VI) fails because Plaintiffs do not allege in their Amended Complaint any risk of physical injury or fear of their own safety, nor do they allege a special relationship with the Foundation that would entitle them to relief under D.C. law.

**Seventh,** Ms. Garlock and Ms. Burchard's defamation *per se* (Count X) fails because the Amended Complaint fails to allege any of the required elements under D.C. law to avoid dismissal of their defamation claims.

4

For these reasons, as expanded upon, *infra*, Plaintiffs' Amended Complaint should be dismissed in its entirety, with prejudice.[5]

## II.   <u>FACTUAL ALLEGATIONS</u>[6]

Plaintiffs are four former executives of the Foundation, all of whom are women and voluntarily resigned from their employment in late 2021.  *See generally* Am. Compl.  Founded in 2019, the Foundation is a non-profit corporation created to further Defendant U.S. Semiquincentennial Commission's (the "Commission") purpose of "facilitating, planning, developing, promoting, and coordinating observances and activities" that commemorate the 250th anniversary of founding the United States.  *Id*. at ¶7.

In the Amended Complaint, Plaintiffs generally allege that they made "repeated and vociferous objections to the cronyism, self-dealing, mismanagement of funds, ***potentially*** unlawful contracting practices and wasteful spending," which were "rebuffed and ignored" by leaders of the Foundation.  *Id.* at Introduction, p. 3 (emphasis added).  In addition, Plaintiffs allege they were "belittled and humiliated in front of their co-workers, kept out of key decision-making meetings, usurped of resources and authority, systematically undermined and subjected to constant demeaning language."  *Id.* Plaintiffs further allege they were given "enormous workloads, and were forced to actually execute large portions of the duties that were the responsibilities of male co-workers, who were paid more than Plaintiffs and/or enjoyed significantly fewer responsibilities and duties."  *Id.*  Finally, Plaintiffs allege that from the Foundation's creation in 2019 to December

---

[5] The Foundation adopts and incorporates the arguments set forth by the co-Defendants in their respective dispositive motions to the extent applicable.

[6] Defendant denies the factual allegations contained in the Amended Complaint.  However, on a motion to dismiss, a moving party must accept the opposing party's allegations of fact as stated, regardless of veracity.

2021, only four women served in executive leadership roles. *Id.* at ¶ 68. All four women are the Plaintiffs. *Id.*

A.      **Plaintiffs' Alleged Noncompliance, Fraud, Waste, and Abuse Concerns**

In October 2021, Plaintiffs allege the Foundation hired an African-American male as its Senior Vice-President (SVP), who was "not given any specific duties or even a job description." *Id.* at ¶¶ 82-84. Plaintiffs then "raised concerns about the hiring of someone without any specific duties" and were "each told that the new SVP was hired as a political favor, and that it was a trade-off for hiring a white male [Chief Executive Officer (CEO)]." *Id.* at ¶ 86. Plaintiffs further allege that, their "concerns were ignored by Foundation and Commission leadership." *Id.* at ¶ 87.

Throughout 2021, Plaintiffs allege the volume of contracts at the Foundation increased and as a result, their workload was "enormous." *Id.* at ¶¶ 88. Plaintiffs claim that as the "volume of Foundation contracts increased, so too did [their] concerns with respect to many of the contracts." *Id.* at ¶ 90. In this regard, Plaintiffs allege they observed, "several of the contracts were with entities with which [Chairperson of the Commission Daniel DiLella ("Mr. DiLella")] and [Executive Director of the Commission Frank Giordano ("Mr. Giordano")] had personal dealings or relationships, [which] created a potential conflict of interest and/or had questionable prices and services." *Id.* Plaintiffs further allege these contracts were "initially fashioned as '*pro bono*' contracts to evade the Foundation's RFP process[,] but then morphed into lucrative paid contracts with no oversight." *Id.* at ¶ 91. Finally, Plaintiffs claim they repeatedly attempted to, "raise concerns about a contract because the pricing was inexplicable, or because the bidding process was improper" and "were shut down by senior leadership." *Id.* at ¶ 92.

In the Amended Complaint, Plaintiffs generally allege that the so-called "Chairman's Group" made certain decisions that only benefited individuals "with personal ties to [its]

members… or specific Commissioners." *Id.* at ¶ 117; *see also id.* at ¶¶ 118 (alleging "on information and belief, the partners of the 21 Marketing were personal friends and associates of Mr. Giordano"), 124 (alleging "[t]he only corporate partnership that 21 Marketing produced was a $10 million contract with Facebook that violated multiple Foundation strategies and policies, and was predicated on what [Ms. Burchard] was concerned was a potentially unlawful quid-pro-quo").

### B. Plaintiffs' Retaliation and Hostile Work Environment Allegations

After raising their alleged concerns, Plaintiffs claim that the Foundation retaliated against them by "excluding them from further meetings about the contracts at issue, undermining and humiliating them with their colleagues and subordinates, and denigrating their work, all of which cumulatively created a hostile work environment." *Id.* at ¶ 96.  Plaintiffs further allege their "work environment was so hostile and treacherous, that they chose to resign rather than be forced to continue working at an organization engaging in unethical practices." *Id.* at ¶ 97. Finally, Plaintiffs allege they attempted to be included in key decisions and decision-making at the Foundation, but were "shut-down, ignored, and retaliated against" and "routinely subjected to a work environment where the women were held to a harsher and more taxing standard than the men." *Id.* at ¶¶ 101, 104.

From this core set of facts, the four Plaintiffs assert a litany of specious claims that all fail as a matter of law as discussed *infra*.

### III.   STANDARDS OF REVIEW

### A. FED. R. CIV. P. 12(b)(1) Standard

Motions to dismiss for want of standing must be evaluated as a Rule 12(b)(1) motion. *See e.g., Steffan v. Cheney*, 733 F. Supp. 115, 116 (D.D.C. 1989).  Rule 12(b)(1) provides for dismissal

where a court lacks subject matter jurisdiction over a plaintiff's claim. If the "irreducible constitutional minimum of standing" is not met, a court lacks subject matter jurisdiction over the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff bears the burden of proof to establish that she has standing and must show that she personally suffered an actual or imminent injury because of defendant's illegal conduct, and that injury can be redressed by a favorable court decision. *Singletary v. Howard Univ.*, 314 F. Supp. 3d 330, 333 (D.D.C. 2018); *see also Steffan*, 733 F. Supp. at 117-9 (finding whether a plaintiff voluntarily resigned was a question of standing to be resolved by reviewing the pleadings).

### B. FED. R. CIV. P. 12(b)(6) Standard

FED. R. CIV. P. 12(b)(6) provides for dismissal where an action fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 544).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The court "need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations," *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), or a "formulaic recitation of the elements of a cause of action," *Twombly,* 550 U.S. at 555.  Courts have a duty not to "conjure up unpleaded facts," *id.* at 562, but rather to dismiss "if the plaintiff fails to plead enough facts to state a claim for relief that is plausible on its face." *Bailey v. Verizon Comm'ns, Inc.*, 544 F. Supp. 2d 33, 36 (D.D.C. 2008) (internal quotations omitted).  To survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### C. FED. R. CIV. P. 9(b) Heightened Pleading Standard

Rule 9(b) applies a heightened pleading standard to fraud allegations under the FCA and requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see also United States ex rel. Totten ("Totten") v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C. Cir. 2002). To satisfy Rule 9(b), a plaintiff must allege the "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Health v. AT&T, Inc.* ("*Heath*"), 791 F.3d 112, 126 (D.C. Cir. 2015), *cert. denied sub nom., AT&T, Inc. v. United States ex rel. Heath*, No. 15-363, 2016 WL 3461577 (U.S. June 27, 2016). This Court has explained that, to meet this heightened pleading standard, the plaintiff must set forth in detail the time, place, and manner of the alleged fraudulent scheme to defraud the Government. *Id.* at 123-24; *see also United States ex rel. Tran v. Computer Sciences Corp. ("Tran")*, 53 F. Supp. 3d 104, 105 (D.D.C. 2014) ("In an FCA action, Rule 9(b) requires the pleader to state the time, place, and content of the false misrepresentation, the fact misrepresented and what was retained or given up as a consequence of the fraud and individuals allegedly involved in the fraud.") (internal citations and quotations omitted). Simply put, a plaintiff must describe the "fraudulent scheme in substantial detail" to provide defendants with "notice of the who, what, when, where, and how with respect to the circumstances of the fraud." *Id.* at 122-23 (internal citations and quotations omitted).

Based on the above standards and as demonstrated in detail below, Plaintiffs' Amended Complaint must be dismissed in its entirety.

IV.   **LAW & ARGUMENT**

A.   **Plaintiffs' FCA Claim (Count I) Must Be Dismissed As a Matter of Law.**

In Count I, Plaintiffs cite to and reference the FCA, specifically 31 U.S.C. § 3729, and its retaliation provision, 31 U.S.C. § 3730(h), without alleging facts necessary to state a plausible claim and without the specificity necessary to satisfy Rule 9(b)'s heightened pleading standard for alleging false claims under the FCA.[7]  *See* Am. Compl. at ¶¶ 384-400.

1.   **Plaintiffs Fail to State a Claim under 31 U.S.C. § 3729.**

At the outset, the Amended Complaint is devoid of any facts, let alone specific facts, to support Plaintiffs' bare allegation of a violation under either § 3729 or § 3730 of the FCA.

To withstand a motion to dismiss, Plaintiffs must allege facts sufficient to establish the following elements in support of their FCA claim: (1) the Foundation submitted a claim ***to the Government***, (2) the claim was false, and (3) the Foundation ***knew*** the claim was false.  *See United States v. First Choice Armor & Equip., Inc.*, 808 F. Supp. 2d 68, 74 (D.D.C. 2011) (emphasis added). To be actionable under the FCA, a false claim also must be "material" to the Government's decision to pay the claim.  *See* 31 U.S.C. § 3729(b)(4); *see also Uni. Health Servs., Inc. v. United States ex rel Escobar ("Escobar")*, 136 S. Ct. 1989, 2002-3 (2016).

In their Amended Complaint, Plaintiffs do not allege any facts to support their bare

---

[7] Indeed, it is unclear whether Plaintiffs intend to raise a substantive claim of an FCA violation under 31 U.S.C § 3729, particularly because the Amended Complaint does not plead any factual allegations of the alleged false claims and because Plaintiffs do not satisfy any of the other conditions requisites necessary to comply with and state a substantive FCA claim.  *See e.g.,* FED. R. CIV. P. 9(b) (requiring allegations of fraud, including fraudulent claims under the FCA, be pled with particularity); 31 U.S.C. § 3730(b)(1) (requiring a complaint by qui tam whistleblower to be filed in the name of the United States and the whistleblower); *id.* § 3730(b)(2) (requiring qui tam claims by private whistleblowers filed under seal, and only after the whistleblowers provided specific information to the Department of Justice).  Nonetheless, in an abundance of caution in the event that Plaintiffs are attempting to state a viable claim under the FCA, the Foundation addresses the pleading and procedural deficiencies that doom any attempt by Plaintiffs to assert an FCA cause of action under Count I of their Amended Complaint.

allegations of a violation under § 3729 of the FCA.  First, Plaintiffs allege that "the fraudulent expense reports, invoices, contract, and improperly executed hires . . . were all paid for out of federally appropriated funds," and that "[t]he only reason that the federal government appropriated the funds to pay for the fraudulent expense reports, invoices, contracts and improperly executed hires . . . [was] because leadership of both the Foundation the Commission improperly represented to Congress that payment was warranted." Am. Compl. ¶¶ 392-93. However, this allegation is insufficient to surmount the applicable pleading standards for FCA claims.

Indeed, Plaintiffs' Amended Complaint is unsupported by any factual allegations of a false claim, let alone the specificity required to show the type of particularity necessary to satisfy Rule 9(b)'s heightened pleading standard.  Specifically, Plaintiffs fail to plead any factual allegations regarding who at the Foundation submitted a claim for payment to the Government, the date of the claim, the amount of such claim, the allegedly fraudulent representation(s) in the claim, and the true state of facts that renders the claim's representations false.  Rather, Plaintiffs make only vague references to a "potentially" false claim, *see e.g.,* Am. Compl. at 2; ¶ 394; 396; 398-99, effectively admitting that Plaintiffs *never* had the factual information necessary to support an allegation of false or fraudulent claims submitted to the United States' government.  Rules 12(b)(6) and 9(b) are designed precisely to prevent these "vague theories in search of factual support" types of actions.

Aside from their own speculation, Plaintiffs fail to allege any facts to demonstrate that the Foundation made false demands or submitted any false records to the Government or any other governmental entity.[8]  *See Totten*, 286 F.3d at 551 ("… the [FCA] proscribes only false 'claims' –

---

[8] Plaintiffs allege that in September 2021, Jesse Askew ("Mr. Askew") submitted an expense reimbursement request of $300.00, to Plaintiff Burchard, for "a dinner strategy session with Plaintiffs Potts." Am. Compl. at ¶ 262.  Further, Plaintiffs allege that Mr. Askew's request for reimbursement was false because Plaintiff Potts maintains that she never met with Mr. Askew

that is, actual demands for money or property, *see* 31 U.S.C. §§ 3729(a)(1), (a)(3), 3729(c) – and

'false records or statements' used to induce such claims, *see* § 3729(a)(2).").  In other words, the

FCA "attaches liability, not to underlying fraudulent activity, but to the claim for payment." *Id.*

Nevertheless, the Amended Complaint is riddled with "potentially" or "possible" allegations as to

any purported fraudulent activity.  *See e.g.,* Am. Compl. at 2-4, ¶¶ 90, 141, 220, 224, 374, 454,

455,460.; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, are therefore insufficient to withstand a motion to

dismiss.").  Indeed, Plaintiffs fail to, at the very least, plead that the Government provided some

portion of the money requested by the Foundation or the Government reimbursed the Foundation

for any of amounts Plaintiffs allege that the Foundation falsely claimed.  *Totten*, 286 F.3d at 551.

Second, Plaintiffs fail to allege facts sufficient to show that the Foundation "knowingly"

violated the FCA.  Under the FCA, a person acts "knowingly" if they: (1) have actual knowledge

of the information, (2) act in deliberate ignorance of the truth or falsity of the information, or (3)

act in reckless disregard of the truth or falsity of the information.  *See* 31 U.S.C. § 3729(b)(1)(A).

The FCA does not "create liability merely for a [defendant's] disregard of government regulations

or improper internal policies unless, as a result of such acts, the provider knowingly asks the

government to pay amounts it does not owe." *United States ex rel. Hockett v. Columbia/HCA

Healthcare, Corp.*, 489 F. Supp. 2d 25, 70 (D.D.C. 2007) (internal quotations omitted).

To establish that the Foundation had the requisite scienter, Plaintiffs must plead plausible

---

for the dinner.  *Id.* at ¶¶ 263-64.  However, these allegations do not help Plaintiffs' FCA claim.
Rather, this instance highlights an example of Plaintiffs' inability to identify an instance where the
Foundation submitted a false claim *to the Government*. Here, Mr. Askew, submitted his
reimbursement request internally, to Plaintiff Burchard. *Id.* at ¶ 262. There are no factual
allegations in the Complaint which that indicate that Mr. Askew's mere $300.00 reimbursement
request was ever actually submitted to the Government by Plaintiff Burchard or anyone else. *See
generally* Am. Compl.

facts from which the Court may reasonably infer knowledge of the falsity. *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 51 (D.D.C. 2014). Plaintiffs fail to allege a single fact about the Foundation's purported knowledge of these alleged "false claims." Plaintiffs' allegations on the Foundation's purported knowledge of "potentially unlawful" conduct, which are based on their "information and belief[,]" is insufficient to avoid the dismissal of their FCA claim. *See e.g.,* Compl. at ¶¶ 90, 94-98, 107, 141, 195, 220, 224, 314, 320, 331, 336, 374, 454, 455, 460, 515, 516; *see also United States ex rel. Bender v. N. Am. Telecomms. Inc.* (*"Bender"*), 686 F. Supp. 2d 46, 53 (D.D.C. 2010) ("As a general rule, pleadings upon information and belief do not satisfy Rule 9(b)'s particularity requirement"). Plaintiffs cannot rely on conclusory allegations that merely track the statutory language, without providing any factual support. *See Iqbal*, 556 U.S. at 678.

Third, Plaintiffs fail to allege facts sufficient to show that the Foundation's purported false claim submissions were "material" to the Government's decision to pay the claim. *See Escobar*, 136 S. Ct. at 2002-03 (finding misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision to be actionable under the FCA). Facts to support the materiality element must be plausibly alleged under Rule 12(b)(6) and with the heightened particularity standard required under Rule 9(b), and dismissal for failure to plead such facts is entirely appropriate. *See e.g., Escobar*, 136 S. Ct. at 2003-4, n.6 (noting FCA claims may be dismissed at the pleading stage under Rules 12(b)(6) and 9(b) wherein the complaint fails to allege facts supporting materiality). In addition, the standard for pleading materiality is demanding because the FCA is not "a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 2003. The fact that the Foundation may be required to abide by statute, regulation, or contract requirements (for example, federal contracting and

procurement regulations – which are not specifically referenced or cited in the Amended Complaint), without more, is insufficient to establish the materiality of compliance with such requirements.   *Id.* at 2001 (finding "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment").

The Amended Complaint should be dismissed because it is devoid of any factual allegations necessary to satisfy the materiality pleading requirements under the FCA.  Aside from their conclusory allegations that the Foundation engaged in conduct "noncompliant, potentially unlawful and/or detrimental to the mission," *see e.g.,* Am. Compl. at ¶ 98, the Amended Complaint makes no factual allegations about the materiality of any purported false claims by the Foundation. Indeed, Plaintiffs fail to connect the dots between the Foundation and/or its employees' alleged conduct and the specific transactions submitted for reimbursement to the Government, and likewise fail to allege facts demonstrating why or how any of the purported fraudulent conduct was material to the Government's payments in those transactions.  Conspicuously absent from the Amended Complaint are any allegations regarding the relevant government agencies' decision to either pay or reject the Foundation's claims involving its non-compliance with federal contract practices.  *See United States ex rel. Folliard v. Comstor Corp.*, 308 F. Supp. 3d 56, 87 (D.D.C. 2018) (dismissing complaint at the pleading stage for failure to satisfy Rule 12(b)(6) because "[w]ithout more than citations to the regulatory framework, the relator has failed to show that any alleged false claim was material to the government's decision to pay") (citing *Escobar*, 136 S. Ct. at 2003 ("A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment.")).

a.   **Plaintiffs Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard.**

Moreover, Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading standard in relation to their FCA claim against the Foundation.  "[T]o prevent parties from bringing fraud claims as pretext for the discovery of unknown wrongs," a complaint alleging fraud must be "specific enough to allow the defendants to prepare their defenses."  *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 25 (D.D.C. 2010) (internal citations and quotations omitted); *see also Heath*, 791 F.3d at 123.  The Amended Complaint is devoid of any facts regarding how the Foundation's purported fraudulent scheme actually operated or who specifically was involved as required by Rule 9(b)'s heightened pleading standard.  *See generally* Am. Compl.

First, Plaintiffs provide no reliable indicia to support a strong inference that the Foundation actually submitted claims to the Government for payment under false pretenses.  *See Heath*, 791 F.3d at 126.  It is not enough to plead that Plaintiffs simply investigated "potential" or "possible" "false claims" without providing any details as to the information discovered in their alleged investigation to support the conclusory allegation that the Foundation violated the FCA.  Instead, the Complaint must state facts supporting Plaintiffs' allegation that the claims submitted were false.  *See Totten*, 286 F.3d at 552.  Here, Plaintiffs' Amended Complaint contains their collective disagreement with management decisions and centers their FCA cause of action on "potential" or "possible" false claims, based on their collective "information and belief."  *See e.g.,* Compl. at ¶¶ 90, 94-98, 107, 141, 195, 220, 224, 314, 320, 331, 336, 374, 454, 455, 460, 515, 516; *see also Bender*, 686 F. Supp. 2d at 53 (dismissing plaintiff's FCA claim for failure to satisfy Rule 9's heightened pleading standard).  While pleadings on "information and belief" require an allegation that "the necessary information lies within the defendant's control[,]" *see Kowal*, 16 F.3d at 1279 n.3, Plaintiffs are required to plead "a lack of access to necessary information in the complaint."

*United States ex rel. Davis v. Dist. of Columbia*, 591 F. Supp. 2d 30, 37 (D.D.C. 2008). Furthermore, "such allegations must also be accompanied by a statement of facts upon which the allegations are based." *Kowal*, 16 F.3d at 1279 n.3. Neither of these conditions are satisfied here.

In addition, Plaintiffs' allegations are unsupported by indicia of reliability and Plaintiffs' FCA claim falls into the category of "opportunistic plaintiffs who have no significant information to contribute of their own" that the FCA discourages. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn ("Springfield")*, 14 F.3d 645, 649 (D.C. Cir. 1994).[9] As such, the Amended Complaint lacks facts to support the allegation of a scheme by the Foundation in violation of the FCA, let alone pleads in "substantial detail" facts necessary to provide the Foundation with "notice of the who, what, when, where, and how" of the purported scheme supposedly operated. *Tran*, 53 F. Supp. 3d at 122-23. Without reliable indicia or any facts plausible alleging the essential elements of their FCA claim, the Amended Complaint must be dismissed for failure to satisfy Rules 12(b)(6) and 9(b).

Second, Plaintiffs fail to plead facts with particularity required under Rule 9(b) to demonstrate that the Foundation fraudulently certified compliance with any statutes, regulations, or policies of a government agency. *See e.g., United States ex rel. Conteh v. IKON Office Sols., Inc.*, 103 F. Supp. 3d 59, 69 (D.D.C. 2015) ("The vague and conclusory allegations offered in support of the plaintiff/relator leads the Court to the conclusion that he wants to engage in a fishing expedition, with the hope that he will discover incriminating information he does not possess nor has any credible reason to believe exists. … Accordingly, the plaintiff/relator has not satisfied the heightened pleading requirement of Rule 9(b)."). Indeed, the Amended Complaint generally

---

[9] *See also United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003) ("The False Claims Act is intended to encourage individuals who are either close observers or involved in the fraudulent activity to come forward, and is not intended to create windfalls for people with secondhand knowledge of the wrongdoing.")

alleges certain false claims were submitted, *see e.g.,* Am. Compl. at Introduction, p.2, but fails to allege exactly when the purported falsities were made, by whom or to whom the purported falsities were made (*i.e.,* to which vendors or government agencies or officials), regarding which contracts, or the format and circumstances of the alleged submission of false claims to the Government. *Heath*, 791 F.3d at 123-4; *Tran*, 53 F. Supp. 3d at 115.

Finally, the Amended Complaint is impermissibly vague concerning any allegedly fraudulent act or omission by the Foundation, including: (a) the content of the alleged falsities the Foundation purportedly submitted (*i.e.,* what the Foundation allegedly falsely claimed to the Government), (b) when and the frequency with which the Foundation submitted the false claims, (c) to whom the claims were allegedly made and whether they were reimbursed, (d) whether Plaintiffs contend that **both** the Commission and the Foundation submitted alleged false claims, (e) the persons involved in which alleged claims submissions, (f) the format and circumstances through which the alleged claims were submitted, and (g) the relevant time period and corresponding factual support. *See generally* Am. Compl.; *see also Si v. Laogai Res. Found.*, 71 F. Supp. 3d 73, 93-4 (D.D.C. 2014) (dismissing claims of false certification that "merely offer[ed] the value allegation" that certain certifications needed to be made, and for failing to "provide any details as to the specific contents of the certification, the timing of the certification, how many times this certification was made over the course of [plaintiff's] employment or, indeed, who made the certification of Defendants' behalf"); *United States ex rel. Folliard v. Hewlett-Packard Co.*, 272 F.R.D. 31, 34-35 (D.D.C. 2011) (dismissing plaintiff's FCA claims because, *inter alia*, the complaint "fails to identify who made the false claims"); *Bender,* 686 F. Supp. 2d at 52 (finding a "complaint must make specific allegations against each individual defendant rather than collective

allegations" under Rule 9(b)'s standard to guarantee defendants sufficient information to prepare response).

In light of the foregoing, Plaintiffs' FCA claim (Count I) must be dismissed in its entirety.

**2.   Plaintiffs Fail to State a Claim under 31 U.S.C. § 3730(h)(2).**

Plaintiffs' claim of retaliation under the FCA must also fail because Plaintiffs' allegations of purported retaliation do not pertain to any submission of a claim for federal government funds. Moreover, Plaintiffs do not allege any facts showing that they engaged in any protected activity, or that the Foundation retaliated against them "because of those acts" to support an FCA retaliation claim under 31 U.S.C. § 3730(h).

In support of their whistleblower protection claim under the FCA, Plaintiffs only allege they "each actively investigated, sought information regarding, questioned other employees and attempted to verify invoices and claims for payment that they reasonably believed were fraudulent, noncompliant, and/or without merit."  Am. Compl. at ¶ 391.  Plaintiffs further allege they "each raised their concerns to their immediate supervisors and superiors of what they believed to be false claims, and that they strongly objected to the payment of such claims." *Id.* at ¶ 394. Thereafter, Plaintiffs claim they were "retaliated against in the form of the creation and escalation of a hostile and toxic work environment." *Id.* at ¶ 396. Specifically, Plaintiffs allege they were "removed from meetings, deprived of information and resources, isolated and undermined by their superiors, humiliated, and denigrated in front of colleagues." *Id.* at ¶ 397.

Section 3730(h) of the FCA provides retaliatory protection for employees who may be considering exposing their employer's fraud.  *See* 31 U.S.C. § 3730(b).  To demonstrate FCA retaliation, Plaintiffs must allege facts showing that (1) they engaged in conduct that was "in furtherance of" a suit under § 3730 (*i.e.,* Plaintiffs engaged in protected activity), and (2) the

Foundation retaliated against them "because of those acts." *United States ex rel. Schweizer v. Oce N.V. ("Schweizer")*, 677 F.3d 1228, 1237 (D.C. Cir. 2012) (internal citations and quotations omitted). The Complaint fails to allege facts sufficient to show either required element. As such, Plaintiffs' FCA retaliation claim is without merit and must be dismissed.

Under the first element, the FCA protects "lawful acts done… in furtherance of an action under [the FCA,]" *i.e.,* steps taken antecedent to a FCA proceeding. 31 U.S.C. § 3730(h)(1). The FCA also insulates from retaliation in situations wherein a plaintiff acts in furtherance of "other efforts to stop one or more violations" of the FCA. *Id.* "Dissatisfaction with one's treatment on the job is not enough" to establish the first element in a FCA retaliation claim. *Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019). "Nor is an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations." *Id.* (internal citations and quotations omitted). Instead, "to be covered by the [FCA], the plaintiff's investigation must concern false or fraudulent claims submitted for federal funding." *Id.*

As demonstrated in Section (IV)(A)(1), *supra,* Plaintiffs' Amended Complaint is unsupported by factual allegations sufficient to show that the Foundation submitted any false claims to the Government for reimbursement and thus, Plaintiffs have not pled that they engaged in any protected activity to trigger protection under § 3730(h) of the FCA. *See Hoyte v. American Nat. Red Cross*, 518 F.3d 61, 70 (D.C. Cir. 2008) (affirming district court's dismissal of FCA claim because plaintiff did not assert a viable FCA action). Simply stated, Plaintiffs' alleged investigation could not reasonably lead to a viable FCA action under § 3729 (so as to support their whistleblower claim under § 3730(h)) because the activity they claim to have been investigating did not and could not amount to a violation of the FCA. *See Hoyte*, 518 F.3d at 70 ("There was not even a 'distinct possibility' that her claim against [defendant] might become viable before or

at trial because under any view of the facts as alleged the claim lacked one of the legal requirements for a reverse false claim charge: the defendant must have an 'obligation to pay or transmit money or property to the Government,' 31 US.C. § 3729(a)(7)."). Plaintiffs have not and cannot, consistent with their Rule 11 obligations, affirmatively plead (with the requisite particularity, or otherwise) that the Foundation committed fraud.  Indeed, Plaintiffs' failure is evident based on the allegations pled in the Amended Complaint, which is replete with references of "potential" fraud, rather than actual fraud.  *See e.g.,* Am. Compl. at Introduction, p.2.  In the absence of facts supporting the viable FCA cause of action, an FCA retaliation claim cannot stand.  *Hoyte*, 518 F.3d at 70.  Moreover, merely informing one's supervisors of a problem is not "protected activity" and therefore, does not afford Plaintiffs whistle-blower protection under the FCA.  *See Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) ("An employee does not engage in protected conduct if he merely informs a supervisor of a problem"); *see also id.* (noting, "an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations" does not amount to protected conduct).  To recover under § 3730(h), it is not sufficient that Plaintiffs further an action under some other statutory scheme or, as here, a non-existent action.  Because Plaintiffs fail to plead a viable FCA action in their Amended Complaint, their § 3730(h) claim must be dismissed as a matter of law.

Second, in addition to alleging they engaged in protected activity (Plaintiffs did not), Plaintiffs must also allege they were wrongfully terminated (alternatively, constructively discharged) "because of" the protected activity.  *See United States ex rel. Schweizer v. Oce N. Am.*, 956 F. Supp. 2d 1, 12 (D.D.C. 2013).  "To succeed on [their] [§ 3730(h)] claim, [Plaintiffs] must show that retaliation for protected activities was a "but-for" cause of the adverse action." *Id.* at 14. Here, Plaintiffs fail to allege they suffered any adverse action "because of" a protected activity.

Not once in the Amended Complaint do Plaintiffs allege that the Foundation retaliated against them or subjected them to any adverse action after raising their purported concerns regarding the Foundation's operation, or that their engagement in any protected activity was the "but-for" cause of an adverse action.

Moreover, Plaintiffs fail to allege any facts showing that they engaged in activity outside their normal job responsibilities. *See Schweizer*, 677 F.3d at 1238 (finding plaintiff's retaliation claim could not succeed unless she "alerted [her employer] of her protected conduct by acting outside her normal job responsibilities, notifying a party outside the usual chain of command, advising [her employer] to hire counsel, or taking 'any [other] action which a factfinder reasonably could conclude would put [her employer] on notice that litigation [was] a reasonable possibility"). For example, in their Amended Complaint, Plaintiffs allege that Ms. Burchard, who held the title of Chief Administrative Officer, was responsible for setting up finance, accounting, HR/payroll, and organization structure, policies and procedures, and operation of the Foundation. Am. Compl. at ¶¶ 113. Plaintiffs continue to allege that Ms. Burchard repeatedly raised her concerns "about these and many other questionable, wasteful, expensive, duplicative, or problematic contracts with Mr. Hommel and Mr. Daniels[.]" *Id.* at ¶ 135. In light of the foregoing, it was part of Ms. Burchard's normal job duties to assist the CEO and COO with the Foundation's operation and to notify leadership with issues regarding the operation's efficiency. *See e.g.*, U*nited States ex rel. Ivanov v. Exelis, Inc.*, 41 F. Supp. 3d 50, 54 (D.D.C. 2014) (granting defendant's motion to dismiss and dismissing plaintiff's FCA claim because "without any facts showing that [plaintiff] engaged in activity outside his normal job responsibilities, [defendant] could not have more been on notice that he was engaged in protected activity, let alone motivated by it"). Moreover, Ms. Burchard's alleged disclosures would not have indicated that she was pursuing an FCA claim, but that she was

simply performing her job as Chief Administrative Officer.  Thus, there are no facts alleged by Plaintiffs that the Foundation had any notice that they were engaged in protected activity when they reported their alleged concerns that could support a FCA retaliation claim.[10]

Finally, as discussed in Sections (IV)(C) and (D), *infra*, Plaintiffs fail to allege facts showing that they suffered an adverse employment action in support of their FCA retaliation claim. Even assuming Plaintiffs allege facts demonstrating that they engaged in protected activity and the Foundation had knowledge of that protected activity (Plaintiffs fail on both counts), they still must show that they were terminated or suffered an adverse employment action *because* of their engagement in the alleged protected activity.  Once again, Plaintiffs have failed in pleading any adverse action in the Amended Complaint.

---

[10] The following includes additional examples of Plaintiffs' failure to sufficiently plead the second element of their FCA retaliation claim: (i) Plaintiffs allege that Ms. Garlock, who held the position of Chief Legal Officer and was instructed to report directly to the CEO, *see* Am. Compl. at ¶ 192, was responsible for providing legal and business advice to the Foundation, *id.* at ¶ 194. Here, Plaintiffs allege that Ms. Garlock raised concerns and/or objections to the CEO and the COO about "contemplated agreements" "in an attempt to mitigate legal risks where possible," *id.* at ¶ 201, along with her concerns on expanding the size of the Foundation's Board, per Mr. Daniels' instruction, *id.* at ¶ 205; (ii) Plaintiffs allege that Ms. Potts, who held the position of Vice-President of Communications and Public Relations and reported to the COO, was responsible for, *inter alia*, drafting press releases for the Foundation, *id.* at ¶¶ 229, 233.  Here, Plaintiffs allege Ms. Potts asked Mr. Hommel about terminating the Foundation's contract with 21 Marketing, *id.* at ¶¶ 271-72, and also raised concerns regarding the Foundation's contract with Facebook in light of "its promise of exclusive announcement rights that would prevent most media outlets from coverage opportunities," *id.* at ¶ 271; and (iii) Plaintiffs allege that Ms. Laymon, who held the position of Vice-President of Programs and Planning, *id.* at ¶ 300, and was responsible for program planning, *id.*.  Here, Ms. Laymon expressed her concerns regarding certain Commissioners and their role with the Foundation, along with concerns about excessive spending, *id.* at ¶ 301, Mr. Giordano's salary, *id.* at ¶ 305, a partnership agreement with Defendant American Battlefield Trust ("ABT"), *id.* at ¶ 316, and the Foundation's communication firm, *id.* at ¶ 325.

In sum, all of the foregoing concerns and/or disclosures allegedly reported to the Foundation by Plaintiffs pertained to their respective job functions.  As such, Plaintiffs fail to allege that the Foundation had any notice that they were engaged in any alleged protected activity, yet alone were motivated by their engagement that could support a retaliation claim under the FCA.

Indeed, Plaintiffs allege that they each voluntarily resigned from their employment with the Foundation. *See* Am. Compl. at ¶¶ 183, 224, 296, 380. Voluntarily resignations do not equate to an adverse action.[11] *See Brown*, 828 F. Supp. 2d at 1 (finding wrongful termination claim without merit because plaintiff resigned from her employment); *see also Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007) ("In order to meet the 'materially adverse' standard [in a retaliation claim], a plaintiff must suffer some "objectively tangible harm."). Because Plaintiffs did not suffer any adverse employment action, they failed to plead adequate facts to sustain an FCA retaliation claim.

In light of the foregoing, Plaintiffs' retaliation claim under the FCA, specifically 31 U.S.C. § 3730(h) fails as a matter of law and must be dismissed accordingly.

## B.   Plaintiffs' Pay Discrimination Claim under the DCHRA (Count II) Must Be Dismissed As A Matter of Law.

In Count II, Plaintiffs allege the Foundation violated the DCHRA by engaging in discriminatory pay practices based on gender. *See* Am. Compl. at ¶¶ 401-14. Claims of unequal pay under the DCHRA are governed by the standards of the Equal Pay Act. *See e.g., Hawley v. Blackboard, Inc.*, No. CIV.A. 03-656 (GK), 2005 WL 513496, at *8 (D.D.C. Mar. 3, 2005) (citing *Howard Univ. v. Best*, 484 A.2d 958, 984 (D.C. 1984)); *see also* D.C. Code § 2-1402.11(a)(1)(A). A plaintiff who alleges that she was unlawfully paid less than a man must establish that the "employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Howard Univ.*, 484 A.2d at 984; *see also George Washington*

---

[11] The D.C. Circuit defines adverse employment actions as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Brown v. Georgetown Univ. Hosp.*, 828 F. Supp. 2d 1, 8 (D.D.C. 2011).

*Univ. v. Violand*, 940 A.2d 965, 979 (D.C. 2008) (finding proof of "equal work" requires "equal skill, effort, and responsibility" under similar conditions for a DCHRA pay discrimination claim).

Here, Plaintiffs try, but fail, to allege a single male comparator in their Amended Complaint.  Plaintiffs amended their Complaint to allege that they "were paid less than their commensurate male colleagues, and . . . were made to complete the work of their male colleagues who were paid more than they were and doing less work."  Am. Compl. ¶ 406.  Plaintiffs allege that "they were paid less than Scott Hommel, Matt Schitzel, Michael Frazier, Kyle Anderson, and Jesse Askew, while often having to do their work."  *Id.* at ¶ 407.  However, stating the names of purportedly commensurate male colleagues, and jumping to the unsupported conclusion that they were paid more than Plaintiffs despite doing less work, is insufficient to constitute a valid pay discrimination claim under the Equal Pay Act or the DCHRA.  *Howard Univ.*, 484 A.2d at 984; *see also Savignac v. Day*, 539 F. Supp. 3d 107, 117 (D.D.C. 2021) ("Most significantly, Defendants are entitled to know what skills, efforts, and responsibilities [Plaintiff] contends define the 'equal work' that, in her view, required equal pay.").  None of the Plaintiffs held the position of SVP (the positions of Mr. Askew (VP and Mr. Anderson SVP)), *see* Am. Compl.¶ 408,[12] and Plaintiffs fail to identify whether Ms. Laymon's "male colleagues" performed work under similar conditions or that any of the Plaintiffs' responsibilities were similar to the alleged comparators' working conditions. *See e.g.,* Am. Compl. at ¶¶ 112 (alleging Ms. Burchard was responsible for executing the administrative functions at the Foundation), 185 (alleging Ms. Garlock was employed as the Foundation's Chief Legal Officer), 229 (alleging Ms. Potts was responsible for,

---

[12] Plaintiffs allege in Count II that, "they were never given the opportunity to apply or compete for the VP and SVP positions of Mr. Askew and Mr. Anderson, even though they carried out the duties of those positions."  *See* Am. Compl. at ¶ 408.  This is because "the SVP position was created in secrecy and never posted or publicized . . . ." *Id.* at ¶ 83.  While this may not constitute best hiring practices, it is not indicative of pay discrimination based on gender or any other discriminatory animus.

*inter alia,* drafting press releases for the Foundation), 300 (alleging Ms. Laymon was the Vice-President of Programs and Planning at the Foundation).

Since Plaintiffs have failed to plead facts sufficient to show that, the skills, effort, and responsibilities required of them and male employees at the Foundation were substantially equal, Plaintiffs fail to sufficiently allege pay discrimination based on gender in violation of the DCHRA. In light of the foregoing, Plaintiffs' gender-based DCHRA pay disparity claim fails as a matter of law and must be dismissed accordingly.

### C. Plaintiffs' Discrimination, Retaliation, and Hostile Work Environment Claims under the DCHRA (Count III) Must Be Dismissed As A Matter of Law.

In Count III, Plaintiffs allege the Foundation discriminated, retaliated, and subjected them to a hostile work environment based on gender in violation of the DCHRA.  *See* Compl. at ¶¶ 415-27. Specifically, Plaintiffs allege they were "given an unreasonable workload, repeatedly marginalized in team meetings, denied staff and resources, isolated and ignored, and spoken in an antagonistic and demeaning manner, and harshly and openly criticized in front of colleagues."  *Id.* at ¶ 421.  Plaintiffs further allege the "requests were made of [them] that were never made to their male colleagues, and [they] were expected to do the work of their male colleagues."  *Id.* at ¶ 422. Contrary to the foregoing allegations, Plaintiffs' DCHRA claims fail and are subject to dismissal.

#### 1. Plaintiffs' Discrimination Claim under the DCHRA Fails.

In the absence of direct evidence of discrimination, which is not alleged in Plaintiffs' Amended Complaint, Plaintiffs must rely on the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Clemmons v. Acad. for Educ. Dev.*, 70 F. Supp. 3d 282, 294 (D.D.C. 2014) (noting, in analyzing a claim of employment discrimination under the DCHRA, this Court looks to Title VII jurisprudence).  Here, Plaintiffs fail to allege sufficient facts to articulate a claim for gender discrimination under *McDonnell Douglas*'s burden-shifting

scheme.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination.  To establish a *prima facie* case of discrimination, Plaintiffs must prove by a preponderance of the evidence that: (1) they were within a protected class; (2) they suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Easaw v. Newport,* 253 F. Supp. 3d 22, 26 (D.D.C. 2017).  After Plaintiffs establish a *prima facie* case, the burden then shifts to the Foundation to present some legitimate, non-discriminatory reason for their employment separation. *McDonnell Douglas*, 411 U.S. at 802.  If the Foundation does so, Plaintiffs must then prove that the legitimate reason offered by their former employer is pretext for discrimination.  The D.C. Circuit has "been clear [] that at the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a *prima facie* case." *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (internal quotations and citations omitted).  Nevertheless, "the plaintiff must still allege sufficient facts to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (stating, "allegations must go beyond an unadorned, the-defendant-unlawfully-harmed-me accusation")).

Any fair reading of the Amended Complaint demonstrates that Plaintiffs fail to allege facts – as opposed to legal conclusions – that plausibly suggests the Foundation discriminated against them based on gender.  Putting aside the conclusory and speculative allegations in their Amended Complaint, Plaintiffs' gender-based discrimination allegations essentially boil down to the following: (1) in or around October 2021, the Foundation hired an African-American male as its SVP, who was not given any specific duties or even a job description and was hired as a "political favor," *id.* at ¶¶ 82-86; (2) since the Foundation's inception until each of Plaintiffs' resignations,

26

all positions of "actual power and authority" at the Foundation and the Commission "have been held exclusively by men," *id.* at ¶ 78; (3) Mr. Daniels' alleged sexist comments, including that Ms. Burchard was "insufficiently loyal to him and his personal success[,]" "signif[ying] that she was not a 'team player[,]'" *id.* at ¶¶ 157, 161 (alleging Mr. Daniels also asked Ms. Garlock to "plead her personal loyalty to him and be loyal in his individual success – or there would be no place for her on his team") (emphasis omitted); (4) Mr. Hommel's failure to take action in a dispute between Ms. Laymon and partners of 21 Marketing, *id.* at ¶ 341, who purportedly made certain "sexist" remarks, which Plaintiffs fail to specify; (5) the Foundation's failure to hire a woman CEO after Dr. Rucci resigned, *id.* at ¶¶ 80-81; (6) Scott Hommel, Matt Schatzel, Michael Frazier, Kyle Anderson, and Jesse Askew were paid more than Plaintiffs despite performing similar duties, *id.* at ¶ 102; (7) Mr. Daniels accused Plaintiff Burchard of being a non-team player and that he heard things differently when she spoke; *id.* at ¶ 157; (8) Mr. Askew was given more favorable terms of employment than Plaintiff Potts because he was permitted to work only four days a week and she was not, *id.* at ¶ 247; and (9) that Mr. Hommel informed Plaintiff Laymon that Mr. Askew wanted a higher job title and salary than Plaintiff Laymon and that she would have to be okay with it, *id.* at ¶ 358.  None of these allegations, alone or collectively, are sufficient to withstand dismissal of Plaintiffs' claims.

First, there is nothing to support a causal inference that gender was a motivating factor in the foregoing circumstances.  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" at the pleading stage and cannot sustain Plaintiffs' discrimination claim.  *Slate v. Public Defender Serv.,* 31 F. Supp. 3d 277, 298 (D.D.C. 2014) (quoting *Iqbal*, 556 U.S. at 678).  In their Amended Complaint, Plaintiffs fail to show "by contrast [] how [male employees] were treated by Defendant," and that they were "treated

differently because of [their] gender." *Id.*; *see also Staropoli v. Donahoe*, 923 F. Supp. 2d 11, 20 (D.D.C. 2013), *aff'd*, No. 13-5070, 2013 U.S. App. LEXIS 16068 (D.C. Cir. 2013).  Plaintiffs' allegations of discrimination based on their gender derive from their generally vague, yet collective disagreements of leadership's decisions.  The Amended Complaint fails to plead any facts to show that the alleged differential treatment between male and female employees was ***based on gender***. *See Slate*, 31 F. Supp. 3d at 298 (dismissing Plaintiff's gender discrimination claims under DCHRA for failing to sufficiently plead a causal link between his termination and gender).  Here, Plaintiffs simply allege that they reported their concerns and oppositions to CEO Mr. Daniels and/or COO Mr. Hommel as part of their respective responsibilities as executives (which they allege were ignored by leadership for various reasons), yet fail to plead a causal link between the Foundation's decision to ignore their concerns and their gender.

Second, Plaintiffs fail to plead that they suffered an adverse employment action as they each voluntarily resigned from employment. *Id.* at ¶¶ 183, 224, 296, 380.  An employee suffers an adverse employment action if they experience "materially adverse consequences affecting the terms, conditions, or privileges of employment … such that a reasonable trier of fact could find objectively tangible harm." *Valles-Hall v. Center for Nonprofit Advancement,* 482 F. Supp. 2d 118, 145 (D.D.C. 2007).  "Mere threats of termination do not rise to the level of adverse employment action because they result in no materially adverse consequences or objectively tangible harm." *Id.* (internal quotations omitted).  In their Amended Complaint, Plaintiffs do not assert that they suffered any adverse action that affected the "terms, conditions, or privileges" of their employment, or at the very least, a tangible workplace consequence.  *See Lewis v. District of Columbia*, 885 F. Supp. 2d 421, 428 (D.D.C. 2012) (finding a discrete set of events that "though annoying and inconvenient, do not constitute materially adverse action").  Plaintiffs specifically

fail to allege any "significant change" in their respective employments, and there are no allegations in the Amended Complaint regarding their hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits. *Clemmons,* 70 F. Supp. 3d at 302 ("Although a less obvious harm may also qualify as a materially adverse action, it must not be unduly speculative.") (internal quotations omitted).   Indeed, Plaintiffs do not allege the Foundation failed to promote them in any capacity, they were assigned significantly different responsibilities, or that the Foundation caused any significant changes in their benefits and/or compensation during their employment.  *See generally* Am. Compl.

In sum, the Amended Complaint is completely devoid of any allegations that would bolster the conclusory assertion that the Foundation discriminated against Plaintiffs based on gender during their employment.  Plaintiffs' scant factual allegations simply do not add up to a plausible claim of discrimination under the DCHRA.  In light of the foregoing, Plaintiffs' gender-based discrimination claim under the DCHRA fails as a matter of law and must be dismissed accordingly.

### 2.  Plaintiffs' Retaliation Claim under the DCHRA Fails.[13]

To establish a *prima facie* case of retaliation under the DCHRA, Plaintiffs must demonstrate that (1) they engaged in a statutorily protected activity; (2) the Foundation took an adverse employment action; and (3) there is a causal relationship between the two.  *See Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 75 (D.D.C. 2007); *Mdondji v. InterPark, Inc.*, 768 F. Supp. 263, 286 (D.D.C. 2011) (noting retaliation claims under the DCHRA are analyzed in the same manner as claims arising under Title VII).  In their Amended Complaint, Plaintiffs allege the Foundation

---

[13] The Amended Complaint if not a model of clarity regarding whether Plaintiffs assert a claim of retaliation under the DCHRA.  Plaintiffs label the cause of action, "Gender Discrimination-Hostile Work Environment."  *See* Am. Compl., Count III.  However, Plaintiffs allege, in a conclusory fashion, they were "retaliated against."  *Id.* at ¶ 423.  The Foundation addresses this claim out of an abundance of caution.

retaliated against them after raising "warnings and concerns about Foundation activities" by marginalizing, devaluing, underpaying, ignoring, under-resourcing, and overworking Plaintiffs "because of their gender."  Am. Compl. at ¶¶ 423; 425-26.

As set forth in detail in Section (IV)(C)(1), *supra*, Plaintiffs fail to plead an adverse employment action in support of their DCHRA claims.  Moreover, Plaintiffs fail to allege a causal relationship between their engagement in any protected activity and the Foundation's purported discriminatory treatment.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation… which requires that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").  In their Amended Complaint, Plaintiffs fail to plead "but-for" causation in support of their DCHRA retaliation claims against the Foundation. Indeed, Plaintiffs' assertions are the hallmark of conclusory allegations and are nothing more than their subjective beliefs.

In light of the foregoing, Plaintiffs' retaliation claim under the DCHRA fails as a matter of law and must be dismissed accordingly.

### 3.  Plaintiffs' Hostile Work Environment Claim under the DCHRA Fails.

To establish a hostile work environment claim, Plaintiffs must show that (1) they are members of a protected class; (2) they endured harassment that was severe or pervasive such that it altered a term, condition, or privilege of employment; and (3) the harassment was based on their membership in the protected class.  *See e.g., Walden v. Patient-Centered Outcomes Research Institute,* 177 F. Supp. 3d 336, 344 (D.D.C 2016) (dismissing hostile work environment claim because plaintiff pled the same allegations upon which she relied her disparate treatment and retaliation claims).  A hostile work environment exists "when the workplace is permeated with

30

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal citations and quotations omitted).  In determining if such an environment exists, this Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (internal citations and quotations omitted).  These hostile acts "must be adequately connected to each other… as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

As a general matter, this Circuit "frown[s] on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim." *Walden*, 177 F. Supp. 3d at 344 (quoting *Dudley v. Washington Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 164 (D.D.C. 2013)); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims … are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.").  Plaintiffs' allegations – which are the same ones upon which their disparate treatment and retaliation claims are based – fail to support their hostile work environment claim.  *See* Am. Compl. at ¶¶ 415-27.  In their Amended Complaint, Plaintiffs do not plead they were subjected to the kind of "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Walden*, 177 F. Supp. 3d at 344 (internal citations and quotations omitted).  Instead, Plaintiffs collectively plead the same allegations in support of their discrimination, retaliation, and hostile work environment claims under the DCHRA, including, *inter alia*, that they were excluded from meetings, undermined and humiliated in front of their colleagues, denigrated for their work,

and isolated/ignored by certain co-executives of the Foundation.  *See e.g.,* Am. Compl. at ¶¶ 92, 96, 99, 101.  Moreover, Plaintiffs fail to allege a "discrete act" or gender-based conduct that is sufficiently pervasive to plead a claim for hostile work environment.  *See Munro v. LaHood*, 839 F. Supp. 3d 354, 365 (D.D.C. 2012) ("And mere reference to alleged disparate acts of discrimination cannot be transformed, ***without more***, into a hostile work environment.") (emphasis in the original) (internal citations omitted).  As such, Plaintiffs' reiteration of the same factual allegations upon which all of their DCHRA claims are based is insufficient and Plaintiffs fail to establish a "discrete act" demonstrating extreme conduct as required in hostile work environment claims.  *See Walden*, 177 F. Supp. 3d at 345.

In light of the foregoing, Plaintiffs' hostile work environment claim under the DCHRA fails as a matter of law and must be dismissed accordingly.

**D.    Plaintiffs' Wrongful Termination or in the Alternative, Constructive Discharge Claim (Count IV) Must Be Dismissed For Lack of Standing.**

In Count IV, Plaintiffs allege they were wrongfully terminated from employment.  *See* Am. Compl. at ¶¶ 428-39.  First and foremost, Plaintiffs' wrongful termination claim must be dismissed because they have not plead facts sufficient to show that their allegations of wrongful termination is facially plausible.  *See Iqbal*, 556 U.S. at 678.  As a result, Plaintiffs have not carried their burden to prove that this Court has subject matter jurisdiction over their claims.  *See Steffan*, 733 F. Supp. at 117-9.

To assert a wrongful termination claim, Plaintiffs must demonstrate that they were in fact terminated by their employer.  *See Clay v. Howard Univ.*, 128 F. Supp. 3d 22, 27 (D.D.C. 2015).  Plaintiffs fail in pleading this initial requirement.  *See* Am. Compl. at ¶¶ 183, 224, 296, 380.  Furthermore, the law in the District of Columbia and this Court is clear that a voluntary resignation cannot be used as the basis for a wrongful termination claim.  *See e.g., Brown*, 828 F. Supp. 2d at

32

1; *see also Knight v. Mabus*, 134 F. Supp. 3d 348, 357 (D.D.C. 2015) (finding a voluntary resignation "does not amount to an adverse employment action by [an] employer"); *Aliotta v. Blair*, 614 F.3d 556, 566 (D.C. Cir. 2010) (finding an individual who voluntarily resigns from employment "suffer[s] no adverse employment action"). Thus, without having been terminated, Plaintiffs' wrongful termination fails as a matter of law and must be dismissed accordingly.

Additionally, Count IV should be dismissed because Plaintiffs' fail to allege all the requisite elements of a wrongful termination claim. *See* Am. Compl. at ¶¶ 428-39. "To state a claim for wrongful termination, plaintiff employees must show that a claimed public policy is clearly reflect[ed] and firmly anchored either in the Constitution or in a statute or regulation, and there must be a close fit between the policy declared and the conduct at issue in the allegedly wrongful termination[.]" *Ablibalogun v. First Coast Security Solutions, Inc*., 67 F.Supp.3d 211, 217 (D.D.C. 2014) (internal citations and internal quotations omitted)). Here, Plaintiffs wholly fail to articulate any specific public policy the Foundation violated. *See* Am. Compl. at ¶¶ 428-39.

Alternatively, Plaintiffs have also failed to plead a constructive discharge claim. "An actionable constructive discharge claim requires a showing that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Brown*, 828 F. Supp. 2d at 10. In the D.C. Circuit, "a finding of constructive discharge depends on whether the employer deliberately made working conditions intolerable and drove the employee out." *Id.* (internal quotations omitted). "The test is objective and federal courts have established a relatively high threshold for what a reasonable employee would tolerate." *Id.*

As discussed in Section (IV)(C)(3), *supra*, Plaintiffs have failed to plead sufficient facts to demonstrate a hostile environment claim under the DCHRA.  *See Walden*, 177 F. Supp. 3d at 346 ("Given that the court has found that she has failed to plead sufficient facts to make out a hostile work environment claim, logic compels the finding that she has not sufficiently pleaded a constructive discharge claim."); *see also Robinson v. Ergo Solutions, LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015) (finding constructive discharge claims require "something more" than a hostile work environment claim); *Bishopp v. Dist. of Columbia*, 788 F.2d 781, 790 (D.C Cir. 1986) ("A finding of constructive discharge requires a finding of intentional discrimination [or retaliation] plus a finding of aggravating factors that suggest that the complainant was driven to quit.").  As with their hostile work environment claim, Plaintiffs cannot merely rest on the same factual pleadings upon which their disparate treatment and retaliation claims are based.  *Walden*, 117 F. Supp. 3d at 346-46.

Additionally, Plaintiffs fail to allege any facts sufficient to demonstrate that they were constructively discharged from employment.  *See Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 78 (D.D.C. 2006) ("The kinds of situations where courts have upheld constructive discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination.").  Indeed, this Court has noted that courts ordinarily regard as voluntary an employee's decision to quit out of concern for her health.  *Id.* (citing *Spence v. Maryland Cas. Co.*, 995 F. 2d 1147, 1156 (2d Cir. 1993) ("[T]he fact that an employee develops stress-related ill health from the demands of his voluntarily undertaken position or from criticisms from his performance, and as a result determines that health considerations mandate his resignation, does not normally amount to a constructive discharge by the employer.")).

In light of the foregoing, Plaintiffs' wrongful termination claim (or alternatively, constructive discharge claim) fails as a matter of law and must be dismissed accordingly.

**E.**     **Plaintiffs' Negligence Claim (Count V) Must Be Dismissed As a Matter of Law.**

Plaintiffs fail to state a cognizable duty owed to Plaintiffs by the Foundation.  Pursuant to District of Columbia law, "to maintain a cause of action under a theory of negligence, the plaintiff must show that there was 'a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.'"  *Simms v. District of Columbia*, 699 F.Supp.2d 217, 227 (D.D.C. 2010) (quoting *Wash. Metro. Area Transit Auth. V. Ferguson*, 977 A.2d 375, 377 (D.C. 2009)).  To establish the legal duty element in a negligence claim, the plaintiffs "must specify a negligent act and characterize the duty whose breach might have resulted in negligence liability."  *Id.* (internal quotations omitted).  "[A] complaint alleging negligence may not rest on mere 'conclusory assertions' as to the existence of any element of the claim, including duty."  *Id.* (quoting *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982)).

To establish the duty element in a negligence claim, "plaintiffs bear the burden of presenting evidence 'which establishes the applicable standard of care . . . .'"  *Snead v. U.S.*, 595 F.Supp. 658, 663 (D.D.C. 1984) (quoting *Kosberg v. Washington Hospital Center, Inc.*, 394 F.2d 947, 949 (D.C. Cir. 1968)).  "The standard of care by which the defendant's conduct is measured in ordinary negligence cases is that which is reasonable under the circumstances."  *Id.*; *see also Washington Hospital Center v. Butler*, 384 F.2d 331, 335 (D.C. 1967).  "It is also applicable in the law of professional negligence, requiring those with special training and experience to conform to conduct commensurate with such qualifications."  *Id.* (holding that the standard of care in medical malpractice claims is that degree of reasonable care and skill expected of members of the medical

profession under the same or similar circumstances).

Here, Plaintiffs' allege that "the Foundation owed them a duty to ensure that they worked in a tolerable environment, free from abuse, retaliation and mental torment."  Am. Compl. ¶ 441.  However, the Amended Complaint is devoid of supporting evidence to establish that this purported duty owed by the Foundation to Plaintiffs reflects a standard of care that is applicable and reasonable under the circumstances.  *Snead v. U.S.*, 595 F.Supp. 658, 663 (D.D.C. 1984) (internal quotations omitted).  Because Plaintiffs fail to sufficiently allege a requisite element of a negligence claim, Count V must be dismissed.

**F.     Plaintiffs' NIED Claim (Count VI) Must Be Dismissed As A Matter of Law.**

In Count VI, Plaintiffs allege NIED on behalf of the Foundation.  *See* Am. Compl. at ¶¶ 451-62.  In support thereof, Plaintiffs allege that the Foundation, "owed them a duty to ensure that they worked in a tolerable environment, free from abuse, retaliation and mental torment."  *Id.* at ¶ 452.  Contrary to their allegations, Plaintiffs fail to plead a NIED claim as a matter of law.

Under D.C. law, a plaintiff may recover for NIED under two theories.  *Islar v. Whole Foods Market Group, Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016).  Under the first theory – the "zone of danger" test – Plaintiffs may recover for "mental distress if [the Foundation's] actions caused [them] to be in danger of physical injury and if, as a result, [Plaintiffs] fear from [their] own safety."  *Id.* (internal quotations omitted).  Alternatively, under the second theory, Plaintiffs may "recover if, among other things, there is a 'special relationship' between the parties that 'necessarily implicates [Plaintiffs'] emotional well-being.'"  *Id.* (quoting *Hedgepath v. Whitman Walker Clinic*, 22 A.3d 789, 811-12 (D.C. 2011)).  Here, Plaintiffs fail to plead either theory to avoid the dismissal of their NEID claim.  *See* Am. Compl. at ¶¶ 451-462.  Plaintiffs do not allege (nor can they) any risk of physical injury in their Amended Complaint or fear of their own safety.

*Id.* As such, Plaintiffs fail to allege any "zone of danger" liability on behalf of the Foundation. Additionally, Plaintiffs have not alleged that they and the Foundation had anything other than an arm's length, employer-employee relationship, foreclosing any "special relationship" liability. *See Islar*, 217 F. Supp. 3d at 268 (dismissing NEID claim for failure to plead any facts under its two theories).

In light of the foregoing, Plaintiffs' NEID claim fails as a matter of law and must be dismissed accordingly.

### G.   Plaintiff Garlock and Plaintiff Burchard's Defamation *Per Se* Claim (Count X) Must Be Dismissed As a Matter of Law

In order to articulate a claim for defamation *per se* under District of Columbia law, "a plaintiff must allege '(1) that [she] was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm.'" *Zimmerman v. Al Jazeera America, LLC*, 246 F.Supp3d 257, 272 (D.D.C. 2017) (quoting *Farah v. Esquire Magazine*, 736 F.3d 528, 533-34 (D.C. Cir. 2013) (citations omitted)). Moreover, "[w]hen the speech [at issue] is of public concern and the plaintiff is a public official . . . the Constitution clearly requires the plaintiff to surmount a much higher barrier before recovering damages . . . than is raised by the common law." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986). Specifically, a public figure cannot recover "damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). For defamation *per se* claims, the elements "mirror those of defamation, with defamation *per se* occurring only where a defendant has falsely accused the plaintiff of

committing a crime or other unlawful act." *Couch v. Verizon Commc'ns, Inc.,* No. 20-2151 (RJL), 2021 WL 4476698, at *5 (D.D.C. Sept. 30, 2021).

Plaintiff Garlock and Plaintiff Burchard fail to plead the precise alleged defamatory statement with particularity in support of their defamation *per se* claim. *See Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996); *see also Watwood v. Credit Bureau, Inc.*, 68 A.2d 905, 906 (D.C. 1949). Plaintiff Garlock and Plaintiff Burchard allege that "[o]n information and belief," Mr. Frazier told Jess Bravin, a journalist with the Wall Street Journal, "Plaintiffs Garlock and Burchard had approved payment of more than $30,000 in invoices ***that Plaintiffs believed to be fraudulent***." Am. Compl. at ¶¶ 515-18 (emphasis added).[14] While Plaintiffs amended their Complaint in an effort to include further information as to the time, place, content, speaker and listener of the alleged defamatory matter, *see id.*, Plaintiffs plead these added factual allegations only based "[o]n information and belief," which is insufficient. *See Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996); *see also Watwood v. Credit Bureau, Inc.*, 68 A.2d 905, 906 (D.C. 1949). Moreover, the alleged defamatory statement made by Mr. Frazier to Wall Street Journal Journalist Jess Bravin ("Ms. Bravin") constitutes a statement made about public figures—Plaintiffs Garlock and Burchard—regarding matters of public concern—spending of federal funds for allegedly fraudulent purposes. *See* Am. Compl. ¶¶ 515-18. Specifically, the Amended Complaint sets forth that Mr. Frazier "alleged that Plaintiffs Garlock and Burchard had approved payment of more than $30,000 in invoices that Plaintiffs believed to be fraudulent." *Id.* at ¶ 516 (emphasis added).[15] Despite this, Plaintiffs fail to set forth anywhere in their Amended Complaint, that the

---

[14] While Plaintiffs allege that the at-issue invoices were "fraudulent" there are no allegations that the Foundation, or any of its representatives, characterized the invoices in that manner. *See id.*

[15] At the time the purported defamatory statement was made about Plaintiffs Garlock and Burchard, Plaintiff Garlock was Chief Legal Officer of the Foundation and Plaintiff Burchard was

Foundation, or Mr. Frazier purportedly acting on its behalf, acted with the requisite malice in responding to a press inquiry.

Lastly, Plaintiffs Garlock and Burchard fail to allege that they actually suffered a harm. Specifically, Plaintiffs allege that "[i]nasmuch as the Wall Street Journal has a massive readership, Mr. Frazier knew or should have known that the damage to Plaintiff Garlock and Plaintiff Burchard's reputations would be significant and irreparable." Am. Compl. at ¶ 524. Mr. Frazier's alleged actions *having the potential* to cause significant and irreparable harm is not the same as his actions *actually doing so*. For the foregoing reasons, Count X should be dismissed.

## V.   **CONCLUSION**

For all of the foregoing reasons, Defendant America 250 Foundation respectfully requests that the Court grant this instant Motion and dismiss Plaintiffs Renee Burchard, Kirsti Garlock, Anna Laymon, and Keri Potts's Amended Complaint, *see* ECF No. 19, in its entirety, with prejudice.

---

Chief Administrative Officer and Chief of Staff of the Foundation. Am. Compl. at ¶¶ 1-2. The Foundation was created in 2019 to further The United States Semiquincentennial, a U.S. Congressional commemorative commission's "purpose of facilitating, planning, developing, promoting, and coordinating observances and activities" regarding the 250th anniversary of the founding the United States. *Id*. at ¶¶ 5,7. The 250th anniversary of the United States is a special and noteworthy event in history and a matter of public concern. Accordingly, Plaintiffs Garlock and Burchard fall within the meaning of "public figure" for purposes of the First and Fourteenth Amendments. *Time, Inc. v. Firestone*, 424 U.S. 448, 453 (1976) (holding that those who attain this status [of public figure] have assumed roles of especial prominence in the affairs of society) (quoting *Gertz v. Robert Welch. Inc.*, 418 U.S. 323, 345 (1974)).

Dated: July 29, 2022                  Respectfully submitted,


                                      /s/ Brian A. Scotti
                                      Brian A. Scotti, Esq. (D.C. Bar No. 497125)
                                      Jenna N. Van Middelem, Esq. (D.C. Bar No. 1742387)
                                      GORDON REES SCULLY MANSUKHANI, LLP
                                      1101 King Street, Suite 520
                                      Alexandria, Virginia 22314
                                      (T): 202-399-1009
                                      (F): 202-800-2999
                                      bscotti@grsm.com
                                      jvanmiddelem@grsm.com

                                      *Counsel for Defendant America 250 Foundation*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 29, 2022, a copy of the foregoing was served electronically via the Court's ECF system to all counsel of record.


                                      /s/ Brian A. Scotti
                                      Brian A. Scotti